# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Larry Helms,**
**Plaintiff Below, Petitioner**

**vs)  No. 16-1070** (Marion County 13-C-277)

**Joseph N. Carpenter, in his official capacity as**
**Sheriff and Sheriff's Office of Marion County,**
**Defendants Below, Respondents**

**FILED**

**November 17, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Larry Helms, by counsel David A. Sims, appeals the October 14, 2016, order of the Circuit Court of Marion County that granted summary judgment to Respondent Joseph N. Carpenter, in his official capacity as sheriff, and Respondent Sheriff's Office of Marion County in petitioner's action for alleged civil rights violations; failure to implement appropriate policies, customs, and practices; false arrest; deprivation of liberty without due process; intentional infliction of emotional distress; outrage; battery; negligent violation of constitutional rights; and negligent training and supervision. Petitioner also appeals the October 22, 2016, order that denied his motion to amend his complaint so that he could sue Respondent-Sheriff in his individual capacity. Respondents, by counsel Peter G. Zurbuch, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner obtains the water for his Marion County residence from a well located on the property of his neighbors, Rodney and Tammy Miller. Sometime prior to 9:52 a.m. on Thursday, September 1, 2011, petitioner went to the Miller property to determine why he was having a problem with his water supply. Petitioner claims that the piping at the well had been manipulated to prevent any water from flowing into petitioner's cistern/home. Petitioner states that he reconnected the pipe and then returned to his home.

At 9:52 a.m. that same morning, the Marion County 911 Center received a call from Derrick Steele, who is petitioner's neighbor. Mr. Steele reported that petitioner was "chasing [Mr. Miller] down the road saying 'stop I'm going to beat your head in'" and that petitioner had made threats against Mr. Miller in the past. At 9:54 a.m., petitioner called the Marion County 911 Center regarding the altercation. Deputy Ryan Gannon was dispatched to the scene where he spoke with petitioner and took his statement. Petitioner alleged that (1) his water had tasted bad

1

for two days and he did not have any water at his residence; (2) he went to the well on the Miller property where he found what he believed to be intentional damage to a pipe caused by Mr. Miller; (3) he waited for Mr. Miller to drive by so he could speak with him; (4) Mr. Miller drove by him at a high rate of speed and almost struck him; and (5) he (petitioner) had his rifle with him because Mr. Miller carries a gun. Deputy Gannon instructed petitioner not to have any further contact with Mr. Miller and to stay off the Miller property while the matter was being investigated.

At 4:18 p.m. that same day, Mr. Miller called 911 and said petitioner had been on his property and was fighting with him, but had left and might be going to get a shotgun. Deputy Gannon and Deputy Jonathan Carter responded to the scene where they spoke with Derrick Steele, the neighbor who had called 911 earlier in the day. Mr. Steele reported that he saw petitioner yelling at Mr. Miller and attempting to open the side door of Mr. Miller's truck as it passed petitioner. Deputy Gannon also took statements from Mr. and Mrs. Miller. In his statement, Mr. Miller said the following:

> At 9:30 I walked out to get in my truck and [petitioner] started yelling he was going to kick my ass. So I walked back in and called the counties [sic] and put my 4 year old daughter in the car passenger side back seat. I went down the drive way and [petitioner] was on the bridge grabbed my passenger mirror, and door handle. Screaming he was going to kill me. I cont. to go slowly and he then started chasing me down the road. . . . He attempted to get in my car. I fear for my daughter cause she was right at the passenger door.

Mrs. Miller's statement provided that,

> [a]t 4:05 p.m. [on Thursday, September 1, 2011,] I was coming home up my driveway and [petitioner] came behind me on a 4-wheeler came up on my property yelling. I got something for u bitch. I went into my front yard yelling you are trust passing [sic] he continued walking up saying it was his water. I said this is my property you need to leave. He cursed me calling me a bitch, gutter slut, telling me I don't work, and that he was going to get me and this ain't over. I cont. to yell you are trust passing [sic] this is our property and he was telling me it wasn't. He then came at me got in my face nose to nose calling me a bitch and he would see me dead and he spit in my face. . . .

Thereafter, Deputy Gannon prepared a criminal complaint against petitioner for misdemeanor trespassing on posted land in violation of W.Va. Code § 61-3B- 3(a), and for misdemeanor battery (spitting on Mrs. Miller) pursuant to W.Va. Code § 61-2-9(c). The Sheriff's Department presented the criminal complaint to Magistrate Missy Pride-Linger on Friday, September 2, 2011. That same day, Magistrate Linger found probable cause on both charges and issued a warrant for petitioner's arrest.

Deputies Carter and Gannon arrived for work on Friday, September 2, 2011, at 3:00 p.m. At 4:36 p.m., the deputies were dispatched to petitioner's residence where they executed the arrest warrant. At 5:01 p.m., the deputies brought petitioner to the sheriff's office for processing.

However, the deputies did not present petitioner to the magistrate for arraignment at that time because the magistrate court had closed for the day at 4:30 p.m. Petitioner was thereafter processed and, at 6:05 p.m., left the sheriff's office for the regional jail in Doddridge County. Petitioner arrived there at 6:52 p.m.

The Marion County Magistrate Courts' regular operating hours are 8:30 a.m. through 4:30 p.m., Monday through Friday. Additionally, per Rule 1(b) of the Administrative Rules for the Magistrate Courts of West Virginia, a magistrate is on call at other times, as follows:

> *On call.* — One magistrate in each county, on a rotating basis, shall be on call at all times other than regular office hours. On-call duties shall extend, in criminal cases, to initial appearances; to taking bond for someone who is in jail; and to receiving and acting upon emergency search warrants, domestic violence matters, and juvenile abuse and neglect matters.
>
>> (1) *Initial appearances and taking bond in criminal cases.* — Within the time periods provided for below, the on-call magistrate shall contact the county or regional jail, whichever applies . . . , and shall inquire whether any person has been arrested in the county since the close of regular business hours or since the last contact with the jail, or whether anyone confined to the jail is able to post bond. If an arrest has been made or if a prisoner is able to post bond, the magistrate shall proceed immediately to the magistrate court offices to conduct an initial appearance and to set bail for such person, or to accept bond for someone already in jail.
>>
>> It shall be sufficient to comply with this rule if the on-call magistrate contacts the jail and juvenile detention facility:
>>
>>> (A) Between 10:00 p.m. and 11:00 p.m. Monday through Friday;
>>>
>>> (B) Between 10:00 a.m. and 11:00 a.m. and between 10:00 p.m. and 11:00 p.m. on Saturdays and holidays. . . .

In this case, the on-call magistrate should have called the regional jail on Friday, September 2, 2011, between 10:00 and 11:00 p.m. and arraigned petitioner; however, the on-call magistrate did not do so. Thus, petitioner spent the night in the regional jail. The next morning, Saturday, September 3, 2011, a magistrate promptly arraigned petitioner, allowed him to post bond, and released him from custody.

On July 16, 2012, a magistrate convicted petitioner on the trespassing charge, but acquitted petitioner on the battery charge. On appeal, the circuit court acquitted petitioner of the trespassing charge.

3

On August 30, 2013, petitioner filed the instant action against respondents. Petitioner alleged civil rights violations under 42 U.S.C. § 1983; failure to implement appropriate policies, customs and practices; false arrest; deprivation of liberty without due process; intentional infliction of emotional distress; outrage; battery; negligent violation of constitutional rights; and negligent training and supervision. Specifically, petitioner claimed that (1) Deputies Carter and Gannon arrested him because they were friends with Mr. Miller and doing Mr. Miller a favor; (2) the deputies waited to arrest him until Friday, September 2, 2011, so petitioner would spend the Labor Day holiday weekend in jail; (3) the sheriff's department failed to allow petitioner to voluntarily turn himself in on the warrant, which was the department's policy for minor offenses; (4) the deputies handcuffed him "extra tight"; and respondent-sheriff hugged petitioner while petitioner was handcuffed and "asked about a kiss" in an attempt to embarrass petitioner; and (5) respondent-sheriff's department bypassed an on-call magistrate and took petitioner to jail where he had to wait to be arraigned. With regard to this last claim, petitioner alleges that a magistrate later told his wife that she (the magistrate) was available to arraign petitioner that Friday evening.

Respondents filed an answer in which they (1) claimed petitioner failed to state a claim for which relief could be granted under 42 U.S.C. § 1983, and (2) asserted constitutional and statutory immunity as affirmative defenses to petitioner's federal civil rights and state law claims. Thereafter, respondents filed a "motion to dismiss or, in the alternative, motion for summary judgment." The circuit court heard oral arguments on the motions on May 20, 2015. By agreement of the parties, the circuit court dismissed the false arrest count on statute of limitations grounds. The circuit court then granted petitioner leave to file a memorandum in opposition to respondents' motions. On June 5, 2015, petitioner filed a memorandum in opposition and a motion to amend his complaint, i.e., to assert a "personal capacity" claim against respondent-sheriff. One week later, respondents filed a response in opposition to petitioner's motion to amend.

In April 2016, petitioner sought to depose respondent-sheriff and Deputies Gannon and Carter. Respondents responded with a motion for a protective order and a motion for a ruling on their motion to dismiss or, in the alternative, motion for summary judgment. Following a hearing on all pending motions, the circuit court granted respondents' summary judgment motion by order entered October 14, 2016. Thereafter, on October 22, 2016, the circuit court denied petitioner's motion to amend his complaint on the following ground:

> [Petitioner] waited almost two years to amend his [c]omplaint in what the [c]ourt feels is solely an attempt to circumvent [respondents'] motion to dismiss, or, in the alternative motion for summary judgment. [Petitioner] readily acknowledges . . . that his motion to amend, filed the same day as his opposition to defendant's motion to dismiss, or, in the alternative, motion for summary judgment was filed, is brought to defeat [respondents'] motion. The [c]ourt finds that [petitioner] has failed to show good cause why the [c]ourt should allow the complaint to be amended almost two years after its initial filing; therefore, finding that allowing an amendment to the complaint now would prejudice [respondent-sheriff], who has been a defendant in this case in his official capacity.

4

Petitioner now appeals the October 11, 2016, order that granted respondents' summary judgment motion and the October 22, 2016, order that denied his motion to amend his complaint. Petitioner first argues that the circuit court erred in granting respondents' motion for summary judgment while his discovery motion was pending. Petitioner contends that the circuit court should have allowed him to depose respondent-sheriff and Deputies Carter and Gannon before the circuit court ruled on respondents' summary judgment motion, so that he could properly respond to respondents' motion.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). To the extent that our resolution of this matter requires us to consider a statutory provision, our review is likewise de novo. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review. *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 139, 459 S.E.2d 415, 416 (1995).

Respondent's motion to dismiss or, in the alternative, motion for summary judgment raised immunity defenses to petitioner's state law claims under West Virginia Code § 29-12A-4(b)(1) (providing a political subdivision immunity for damages in a civil action for loss caused by an act or omission of a political subdivision or its employees), and West Virginia Code § 29-12A-5(a)(3) (providing immunity from liability for the execution or enforcement of lawful orders of any court). Respondents' motion also sought dismissal of petitioner's civil rights claims under 42 U.S.C. § 1983, on the ground that neither the sheriff nor his office could be held liable under the theory of respondeat superior or the theory of vicarious liability for the deputies' actions in investigating and arresting petitioner.

We regard to immunity defenses, we have said,

> [t]he United States Supreme Court has held that orders denying substantial claims of qualified immunity should be decided before trial, and these pretrial decisions are immediately appealable under the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ("the entitlement is an *immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if the case is erroneously permitted to go to trial."). We agree with the United States Supreme Court to the extent it has encouraged, if not mandated, that claims of immunities, where ripe for disposition, should be summarily decided before trial. Public officials and local government units should be entitled to qualified immunity from suit under § 1983, or statutory immunity under W.Va. Code, 29–12A–5(a), unless it is shown by specific allegations that the immunity does not apply. *See State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992).

*Hutchison v. City of Huntington*, 198 W.Va. 139, 147-48, 479 S.E.2d 649, 657-58 (1996) (emphasis in the original) (internal footnote omitted). We have also opined that

> [i]mmunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to

5

the burden of trial at all. The very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case.

*Id.* at 148, 479 S.E.2d at 658. Clearly, under *Hutchison*, the immunity from the burden of a trial on the merits may extend to pretrial discovery. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (stating that, in cases of qualified immunity, "even such pretrial matters such as discovery are to be avoided if possible"). Hence, on this record, we find the circuit court did not err in ruling on respondents' motion for summary judgment without first permitting petitioner to depose respondent sheriff and the deputies. We also note that in the October 14, 2016, order, the circuit court highlighted that the case had been "exhaustively briefed by both parties" and it had conducted "two hearings on the matter" before it ruled on respondents' motion. Consequently, we find no error.

Petitioner next argues that the circuit court erred in its October 22, 2016, order in failing to grant petitioner's motion to amend, i.e., to name respondent-sheriff in his individual capacity. Petitioner maintains that the "relation back" doctrine permitted such an amendment, although he fails to explain how that doctrine applies in this case. Petitioner also argues that the circuit court erred in finding that respondent-sheriff would have been prejudiced if it allowed petitioner to sue respondent-sheriff in his individual capacity. Petitioner contends that respondent-sheriff would not have been prejudiced by the amended complaint because discovery had been limited to interrogatories and requests for production of documents. Finally, petitioner argues that the circuit court lacked the authority to rule on petitioner's motion to amend his complaint because the circuit court had already granted respondents' motion for summary judgment.

Petitioner's amended complaint does not relate back to the filing of his original complaint. In Syllabus Point 4 of *Brooks v. Isinghood*, 213 W.Va. 675, 584 S.E.2d 531 (2003), we held the following with regard to the "relation back" doctrine:

Under Rule 15(c)(3) of the *West Virginia Rules of Civil Procedure* [1998], an amendment to a complaint changing a defendant or the naming of a defendant will relate back to the date the plaintiff filed the original complaint if: (1) the claim asserted in the amended complaint arose out of the same conduct, transaction, or occurrence as that asserted in the original complaint; (2) the defendant named in the amended complaint received notice of the filing of the original complaint and is not prejudiced in maintaining a defense by the delay in being named; (3) the defendant either knew or should have known that he or she would have been named in the original complaint had it not been for a mistake; and (4) notice of the action, and knowledge or potential knowledge of the mistake, was received by the defendant within the period prescribed for commencing an action and service of process of the original complaint.

To satisfy the relation back doctrine, the second prong of *Brooks* requires that "the defendant named in the amended complaint received notice of the filing of the original complaint and is not prejudiced in maintaining a defense by the delay in being named[.]" Here, petitioner's original complaint, filed two years before his motion to amend, named respondent-sheriff only in

6

his official capacity, and not in his personal capacity. In other words, the complaint was in reality a suit against the sheriff's office and not respondent sheriff. *See Hansbarger v. Cook*, 177 W.Va. 152 n.4, 351 S.E.2d 65 n.4 (1986). Further, as the circuit court found, respondent-sheriff would be prejudiced if the circuit court would have allowed petitioner to name respondent-sheriff in his individual capacity at this late date. For example, if petitioner had originally named respondent-sheriff in his individual capacity, he could have hired his own counsel at the inception of this action given the potential conflict of interest between respondent-sheriff and his office. Instead, given that petitioner's original complaint named respondent-sheriff in his "official capacity," only one lawyer was hired to represent both respondent-sheriff and the sheriff's department. Further, because respondent-sheriff did not have his own counsel from the inception of petitioner's action, he may have lost the opportunity to garner information or evidence for his defense. Finally, if respondent-sheriff had known that his personal assets were at stake, he might have participated more fully in litigation. Thus, we agree that respondent-sheriff would have been prejudiced by petitioner's two-year delay in filing a motion to amend his complaint. Accordingly, we find petitioner fails to satisfy the second prong of the *Brooks* test.

Petitioner also fails to satisfy the third prong of the *Brooks* test which requires that "the defendant either knew or should have known that he or she would have been named in the original complaint had it not been for a mistake." Here, petitioner's motion to amend does not set forth any mistake of law or fact. Likewise, petitioner fails to satisfy the fourth *Brooks* prong, "notice of the action, and knowledge or potential knowledge of the mistake, was received by the defendant within the period prescribed for commencing an action and service of process of the original complaint." Here, petitioner filed his motion to amend beyond the statute of limitations and beyond the 120-day time limit for service of the original complaint. Hence, petitioner fails to prove that, under Rule 15(c)(3) of the West Virginia Rules of Civil Procedure, his motion to amend relates back to the date petitioner filed his original complaint for statute of limitations purposes.

With regard to petitioner's claim that Judge Frye lacked jurisdiction to rule on petitioner's motion to amend, it is also without merit. A circuit court may rule on an outstanding motion and may correct the failure to do so pursuant to Rule 60 of the West Virginia Rules of Civil Procedure ("[c]lerical mistakes in judgments, orders . . . and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party. . . .").

Petitioner's third and final assignment of error, that respondents were not immune from his civil rights and state law claims, fails as a matter of law. Petitioner sued respondent-sheriff in his official capacity; thus, that claim will be treated as a claim against the sheriff's department. Under § 1983, a sheriff's department may not be held liable for the actions of its employees or agents, but may be held liable for constitutional torts caused by the department's policies, procedures, or customs. *See generally Monell v. Dep't of Soc. Serv. of City of the City of New York*, 436 U.S. 658 (1978). Moreover, "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

Having reviewed petitioner's complaint, we concur with the circuit court's finding that petitioner failed to plead sufficient factual allegations in support of his § 1983 claims, i.e., that a sheriff's office's unconstitutional policy or custom resulted in a violation of petitioner's constitutional rights. For example, petitioner claimed the sheriff's office had a policy of allowing persons charged with minor crimes to appear voluntarily for processing, in lieu of being arrested. However, if the sheriff's department had such an unwritten policy, it is no more than a courtesy and not a right, privilege, or immunity secured by the Constitution. Petitioner also claimed that the sheriff's department had an unwritten policy of bypassing the magistrate and taking the arrested persons the sheriff/deputies disliked to jail for the night. However, in petitioner's case, a deputy took him to jail because he arrived at the sheriff's department after the close of regular business hours; therefore, a deputy transported him to the regional jail to await arraignment by the on-call magistrate. Under Rule 1(b) of the Administrative Rules for the Magistrate Courts of West Virginia, the on-call magistrate should have called the regional jail between 10:00 and 11:00 p.m. that Friday evening and arraigned petitioner. Unfortunately, petitioner failed to be arraigned. However, respondents cannot be blamed for any carelessness on the part of the on-call magistrate and/or the regional jail. Finally, petitioner avers that the deputies should have arrested him on Thursday, September 1, 2011, instead of on Friday, September 2, 2011, which was the start of the Labor Day weekend. However, because the deputies did not witness petitioner commit the misdemeanor crimes of which he was accused, they could not arrest him absent a warrant. *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980); *State v. Byers*, 159 W.Va. 596, 224 S.E.2d 726 (1976); *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). Petitioner's warrant issued on Friday, September 2, 2011, and the deputies promptly arrested him that day. Therefore, we find no error with regard to the circuit court's dismissal of petitioner's § 1983 claims.

Respondents are also immune from petitioner's state law claims brought under the West Virginia Governmental Tort Claims and Insurance Reform Act, West Virginia Code § § 29-12A-1 to -18. Petitioner's intentional tort claims (intentional infliction of emotional distress; outrage; and battery) cannot stand because a political subdivision cannot be held liable for intentional torts. *See* West Virginia Code § 29-12A-4(b)(l) ("a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. . . ."); *see also Elkins Road Public Service Dist.*, 221 W.Va. 409, 414, 655 S.E.2d 155, 160 (2007) (intentional and malicious acts are included in the general grant of immunity in West Virginia Code § 29-12A-4(b)(l)). Only claims of negligence specified in W.Va. Code § 29-12A-4(c) can survive immunity from liability under the general grant of immunity in W.Va. Code § 29-12A-4(b)(1).

Further, Deputies Gannon and Carter cannot be held liable for petitioner's common law negligence claims because they arise from the execution of a lawful arrest warrant. West Virginia Code § 29-12A-4(c)(2) and § 29-12A-5(a)(3) provide that a political subdivision is immune from liability if the claim results from the execution and/or enforcement of a lawful court order, regardless of whether the claim is caused by the negligent acts of a subdivision's employees acting within the scope of their employment. *See Mallamo v. Town of Rivesville*, 197 W.Va. 616, 477 S.E.2d 525 (1996). Therefore, we find that the circuit court did not err in finding that respondents were immune from petitioner's state law claims.

8

Accordingly, for the foregoing reasons, we affirm the circuit court's October 14, 2016, order granting respondents' motion for summary judgment, and the October 22, 2016, order denying petitioner's motion to amend his complaint.

Affirmed.

**ISSUED:**  November 17, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker