CARL W. THOMAS

*v.*

FIRESTONE TIRE AND RUBBER COMPANY

(NO. CC913)

Decided May 23, 1980.

*Marlin D. Schreffler* for plaintiff.

*R. W. Roahrig, Johnston, Holroyd & Gibson,* for defendant.

MCGRAW, JUSTICE

This case presents an issue of first impression in this jurisdiction. We are called upon to decide whether a creditor collecting his own debt is subject to the provisions of the West Virignia Consumer Credit and Protection Act governing the practices of debt collectors.[1]

The case has arisen as follows: In June of 1975, the plaintiff, Carl W. Thomas, entered into a consumer credit contract with the defendant, Firestone Tire and Rubber Company, purchasing various items for his home and car. The goods and services involved were to be paid in installments. During the year 1977, Mr. Thomas became unemployed and he was unable to maintain the payments. He contacted an attorney who, on December 20, 1979, prepared and posted a letter to defendant's local outlet where he purchased the goods, stating that any further correspondence should be directed to the attorney.[2]

Plaintiff contends that the defendant continued attempts to collect the debt from him by communicating directly with him and members of his family by telephone and letter.

Mr. Thomas filed suit in the Circuit Court of Mercer County, alleging violations of the West Virginia Consumer Credit Protection Act. Defendant filed an answer and counterclaim for the outstanding balance on the transaction, which counterclaim was answered by the plaintiff. Following discovery, a motion for partial summary judgment was filed by the plaintiff containing a recital

---

[1] W.Va. Code, §§ 46A-2-101 et seq. [1974]

[2] The letter from Mr. Thomas' attorney specifically stated in part: "Any communication concerning any debt that may be owed by my client to you should be directed to me as their attorney, and not to Mr. and Mrs. Thomas."

of the alleged communications between the defendant and plaintiff. Defendant opposed the motion, admitting the acts of communication, but arguing that it was exempt from the provisions of Chapter 46A, art. 2, because it was not a "debt collector" within the meaning of the act.

Plaintiff's motion was denied upon hearing before the circuit court, and plaintiff moved to certify questions to the Supreme Court of Appeals pursuant to W.Va. Code § 58-5-2.

As framed by the litigants, the following two questions were presented for this Court's consideration by the Circuit Court of Mercer County.

1. Does the term "debt collector" as defined by Chapter 46A, art. 2, § 122, of the *West Virginia Code* include a creditor collecting its own debts?

2. Do sections 126 and 128 of art. 2, Chapter 46A, of the *West Virginia Code,* apply to creditors collecting their own debts?

At the outset, even though not raised as an issue on the facts of this case, we must note that the provisions of Chapter 46A, article 2 of the *West Virginia Code* specifically apply to transactions which may properly be classified as "consumer credit sales" under W. Va. Code § 46A-1-102(12). This is made clear by the language of W. Va. Code § 46A-1-103(3), which specifies that consumer protection in a non-"consumer credit sale" situation is provided exclusively by the provisions of articles six [§ 46A-6-101 et seq.] and seven [§ 46A-7-101 et seq.] of Chapter 46A.

Thus the provisions of article 2 of Chapter 46A [§ 46A-2-101 et seq.] are applicable to a sale of goods, services or an interest in land in which:

> (i) Credit is granted either by a seller who regularly engages as a seller in credit transactions of the same kind or pursuant to a seller credit card;

(ii) The buyer is a person other than an organization;

(iii) The goods, services or interest in land are purchased primarily for a personal, family, household or agricultural purpose;

(iv) With respect to a sale of goods or services, the amount financed does not exceed twenty-five thousand dollars. W. Va. Code § 46A-1-102(12) [1979].

It is also important to note that we are not called upon to decide whether the activities of the defendant in this case did in fact constitute a violation of the Consumer Credit Protection Act. The facts of the controversy are alleged not to be in dispute. The fundamental question submitted is: Is a creditor in a consumer credit sale subject to the provisions of the Consumer Credit Protection Act regulating the practice of debt collection?[3]

---

[3] It is alleged by plaintiff that §§ 126 and 128 of art. 2, chap. 46A, have been violated by the defendant.

W.Va. Code § 46A-2-126 reads in part as follows:

No debt collector shall unreasonably publicize information relating to any alleged indebtedness or consumer. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

\* \* \*

(b) The disclosure, publication, or communication of information relating to a consumer's indebtedness to any relative or family member of the consumer if such person is not residing with the consumer, except through proper legal action or process or at the express and unsolicited request of the relative or family member.

W.Va. Code § 46A-2-128 reads in part as follows:

No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

\* \* \*

(e) Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

The answer to the question presented by this case lies in the interpretation of W. Va. Code § 46A-2-122 [1974].[4] That statute reads in part as follows:

> For the purposes of this section and sections one hundred twenty-three, one hundred twenty-four, one hundred twenty-five, one hundred twenty-six, one hundred twenty-seven, one hundred twenty-eight, and one hundred twenty-nine [§§ 46A-2-123, 46A-2-124, 46A-2-125, 46A-2-126, 46A-2-127, 46A-2-128, and 46A-2-129] of this article, the following terms shall have the following meanings:
>
> * * *
>
> (b) "Debt collection" means *any* action, conduct, or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due to a creditor by a consumer. (emphasis added)
>
> (c) "Debt collector" means *any* person or organization engaging directly or indirectly in debt collection. The term includes any person or organization who sells or offers to sell forms which are, or are represented to be, a collection system, device or scheme, and are intended or calculated to be used to collect claims. (emphasis added)

This statute is clear on its face. "Debt collection" is defined as "*any* action, conduct, or practice . . . in the collection of claims owed or due or alleged to be owed or due to a creditor by a consumer." A "debt collector" is defined as "*any* person or organization engaging directly or indirectly in debt collection." Nowhere is there any indication that the provisions of the act were intended to relate solely to the practices of professional debt collectors, as was contended by the defendant. Indeed, the definitions referred to above seem to negate such an interpretation. "Debt collector" is defined in terms that

---

[4] This statute was amended to include a definition of the term "consumer" by 1978 W. Va. Acts, c. 18. The amendment in no way changes the portions of the statute pertinent to this dispute, and has no effect on the disposition of this case.

include *any* person or organization who engages in the collection of debts, regardless of whether that person or organization is itself the creditor. The statute explicitly states that the definitions included are to control for purposes of sections 126 and 128.

This brings us to the *real* question upon which this case pends—the stuff of which legal argument is made, and upon which judicial reputation is forged. The Court must determine the meaning of the word "any" in the context of this statute.

A preeminent authority, 1 *The Oxford English Dictionary* (reissue, 1970) at p. 378, would offer the following definitive commentary:

> 1. *gen.* An indeterminate derivative of *one*, or rather of its weakened adj. form *a, an,* in which the idea of unity (or, in plural, *partivity*) is subordinated to that of indifference as to the particular one or ones that may be selected. In *sing.* = A - no matter which; a - whichever, of whatever kind, of whatever quantity. In *pl.* = Some - no matter which, of what kind, or how many.

Support for the Oxfordian view can be found as well in *Webster's New Collegiate Dictionary* (1979), at p. 51; *Black's Law Dictionary* 86 (5th ed. 1979); *Ballentine's Law Dictionary* 80 (3rd ed. 1969). For an overview of judicial decisions which have dealt with the meaning of the word, *see generally* 3A Words and Phrases, *"Any"* (Perm. Vol. 1953); *Id., "Any"* (Cum. Suppl. 1979).

This Court has also considered the meaning of the word "any." We cited a basic rule of statutory construction that in the absence of specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning. *Tug Valley Recovery Center v. Mingo County Commission,* ____W.Va. ____, 261 S.E.2d 165 (1979). *See also, State v. Cole,* ____W.Va.____, 238 S.E.2d 849 (1977); *Wooddell v. Dailey,* ____W.Va. ____, 230 S.E.2d 466 (1976); *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970); *Wilson v.*

*Hix*, 136 W.Va. 59, 65 S.E.2d 717 (1951); *Miners v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1931).

We are impressed that the word "any" represents a fundamental and irreducible concept. It is a statue wrought from the letters *A, N* and *Y;* a monument to an idea; an artistic rendering designed to signify a meaningful unit of English language. The Court is led to the unavoidable conclusion that the word "any," when used in a statute, should be construed to mean, in a word, any.

The Court holds that the plain meaning of W.Va. Code § 46A-2-122 requires that the provisions of article 2 of Chapter 46A regulating improper debt collection practices in consumer credit sales must be applied alike to all who engage in debt collection, be they professional debt collectors or creditors collecting their own debts. *Accord, Williams v. Streep Music Company,* 333 So.2d 65 (Fla. Dist. Ct. App., 1976). *See also* Note, *Consumer Law—The Supervised Loan in West Virginia,* 80 W.Va. L. Rev. 256 (1978); Note, *Debt Collection Practices: The Need for Comprehensive Legislation,* 15 Duq. L. Rev. 97 (1976); Anderson, *Coercive Collection and Exempt Property in Texas: A Debtor's Paradise or a Living Hell?,* 13 Hous. L. Rev. 84 (1975); Heiser, *Wisconsin Consumer Act—A Critical Analysis,* 57 Marq. L. Rev. 389 (1974).

The respondent's argument is flawed in its premise that the West Virginia Consumer Credit Protection Act was designed only to regulate the practice of professional debt collectors. That could not have been the intention of the legislature when it used the word "any."

The 1974 enactment of Chapter 46A of the *West Virginia Code* represents recognition by the legislature of abuses in consumer credit transaction practices. In the face of the use of the word "any," it would be improper for this Court to limit the application of the statute to the activities of professional collection agencies. That would be a usurpation of the legislative function. The statute was designed to protect consumers against unscrupulous collection practices, by whomever perpetrat-

ed. In light of the broad remedial purposes of this legislative act, all who engage in debt collection are alike subject to its prohibitions. It would be incongruous to suggest that a creditor could evade the requirements of the statute by collecting his own debt in unconscionable fashion, while another would be held to account if it enlisted the service of a professional collector to pursue the same course of action. Such a strained interpretation would conflict with common sense.

The questions presented to this Court are both answered in the affirmative. The case is remanded for further proceedings consistent with this opinion.

*Certified questions answered; Case remanded.*