655 S.E.2d 155

**Charles B. ZIRKLE, Plaintiff Below, Appellant**

v.

**ELKINS ROAD PUBLIC SERVICE DISTRICT, Defendant Below, Appellee.**

**No. 33307.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2007.

Decided Nov. 15, 2007.

of grant money the City would receive for the project.

Brian W. Bailey, Esq. Horner, WV, for Appellant.

Teresa J. Dumire, Esq., Thomas H. Ewing, Esq., Kay, Casto & Chaney, PLLC Morgantown, WV, for Appellee.

PER CURIAM.

The appellant filed a civil complaint in the Upshur County Circuit Court for damages against the Upshur County Commission and the Elkins Road Public Service District in connection with appellant's efforts to obtain water service for his residence from the Public Service District. The circuit court, applying the provisions of the West Virginia Tort Claims and Insurance Reform Act, *W.Va. Code*, 29–12A–1 *et seq.* [1986], ordered the action dismissed, with prejudice, for failure to state a cognizable claim against the defendants. The appellant appealed the dismissal to this Court. This Court granted the appeal as to the dismissal of the Elkins Road Public Service District, but not the dismissal of the Upshur County Commission.

For reasons stated, we affirm.

## I.

On August 19, 2005, the appellant filed a civil action against the Upshur County Commission ("Commission") and the Elkins Road Public Service District ("PSD") containing allegations of breach of contract, negligence, fraud, civil conspiracy, intentional infliction of emotional distress, and tort of outrage.

The appellant's complaint asserted the following factual allegations: That he is a citizen of Barbour County, West Virginia; that he had resided in Barbour County for approximately four years and had utilized well water as his primary source of water for his residence until March 15, 2004, when he discovered that the well water was contaminated with bacteria; that on March 25, 2004, he contacted the PSD regarding the possibility of obtaining water service to his residence; and that he was advised by the PSD that he would be required to pay approximately $132,000.00 for parts, equipment and installation costs to obtain water service. The appellant also asserted that on June 1, 2004, at a public meeting of the PSD, he orally requested water service, at which time he was advised that the PSD did not have a duty to provide service to his residence, but that he could apply for service in writing, and that the matter would be addressed at the regular July 2004 meeting of the PSD. He further asserted that on July 16, 2004, he made a written request for water service from the PSD by completing an application for service; and, that, subsequently, the PSD refused to provide water service, citing that his residence was outside the PSD service area because he was a resident of Barbour County.

In his complaint the appellant continued with the following assertions: Appellant next confronted the PSD with information that the PSD was providing service to another resident of Barbour County, only to be advised that the PSD would not provide service to appellant's residence until he obtained a letter from the Century–Volga Public Service District indicating that it would not provide the service. The PSD also warned the appellant that he would likely have water pressure problems, recommending that he install a pump, and advised him that he would be required to sign a water pressure waiver. On June 14, 2004, he signed the waiver and indicated he was willing to pay whatever was necessary in order to receive water service. On June 21, 2004, he provided to the PSD a letter from the Century–Volga Public Service District by which the appellant was denied service.

Later the appellant contacted the PSD to determine the status of his water service application, and was advised by a PSD board member that "this can take a long time, and we can make it take longer. You've done pissed us off." On July 12, 2004, the PSD provided pressure test results, and requested additional information, including engineering specifications. Appellant asserts that he complied with the request, but the engineering information he provided was ultimately never used by the PSD. He further asserted that at the August 2004 meeting of the PSD, the PSD requested right-of-way agreements which the appellant asserts had been previously submitted. The appellant further claims that when he left the August meeting he was verbally harassed and insulted by a PSD board member.

Furthermore, at the September 2004 PSD meeting he was advised that an additional right-of-way agreement would be needed from yet another adjoining landowner. Appellant finally asserts that following his efforts with the PSD, on September 17, 2004, he filed a complaint with the Public Service Commission, and that on April 24, 2005, the Public Service Commission issued an order directing the PSD to provide him water service.

The appellant's brief indicates that water service was provided to the appellant after the Public Service Commission order became final.

Appellant filed this action against both the Upshur County Commission and the Elkins Road Public Service District on August 19, 2005, basically for what appellant perceived as all the hassle he incurred in securing water service to his residence. The Upshur County Commission filed a motion to dismiss on September 19, 2005, pursuant Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure.*

On November 8, 2005, the trial court initially denied the Upshur County Commission's motion to dismiss. The trial court, however, required the parties to file a "short and plain statement" [1] tailored to the defense of qualified or statutory immunity.

On May 31, 2006, after review of the pleadings filed by the parties, the trial court entered an order dismissing the civil action, with prejudice, with regard to any and all claims against the Commission and the PSD.

On September 25, 2006, the appellant filed his petition for appeal of the circuit court's order of dismissal. On February 13, 2007, this Court granted the appeal only with respect to the circuit court order dismissing the PSD.

## II.

In Syllabus Point 2 of *State ex rel. McGraw v. Scott Runyan Pontiac–Buick,* 194 W.Va. 770, 461 S.E.2d 516 (1995), we held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*"

In Syllabus Point 3 of *Chapman v. Kane Transfer Company,* 160 W.Va. 530, 236 S.E.2d 207 (1977), we held:

The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, [78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84] (1957).

With these principles in mind we proceed to consider the issues presented in this case.

The appellant, in part, challenges the applicability of the West Virginia Tort Claims and Insurance Reform Act ("Act"), *W.Va.*

---

1. *See Hutchison v. City of Huntington,* 198 W.Va. 139, 149–150, 479 S.E.2d 649, 660 (1996) in which we stated:

   We believe that in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff.... We believe, in cases of qualified or statutory immunity, court ordered replies and motions for a more definite statement under Rule 12(e) can speed the judicial process. Therefore, the trial court should first demand that a plaintiff file a "short and plain statement of his complaint, a complaint that rests on more than conclusion alone." *Schultea v. Wood,* 47 F.3d at 1433. Next, the court may, on its own discretion, insist that the plaintiff file a reply tailored to an answer pleading the defense of statutory or qualified immunity.....

*Code,* 29–12A–1 *et seq.* [1986] to the alleged facts in the instant case based on the language in *W.Va.Code,* 16–13A–3 [2002] which provides that public service districts "may sue, may be sued."

■ The appellant further argues that Syllabus Point 2 of *Marlin v. Bill Rich Const., Inc.,* 198 W.Va. 635, 482 S.E.2d 620(1996) supports his position that *W.Va. Code,* 16–13A–3 controls the disposition of the instant civil action, and not the Act. In *Marlin* this Court held:

> The general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail.

■ This Court has also held, however, that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975). It is not necessary for this Court to construe or interpret plainly-expressed language of a statute. This Court's holding in Syllabus Point 2 of *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951) makes this principle clear:

> A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.

■ This Court further refined this principle in Syllabus Points 4 and 5 of *State v. General Daniel Morgan Post 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959):

> Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use.

> When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.

Applying these tenants of statutory construction to the Act, we first observe that public service districts are clearly included within the scope of the Act. *W.Va.Code,* 29–12A–3(c) states, in part, "(c) Political subdivision means ... public service district...." Second, we believe that the provisions of *W.Va.Code,* 29–12A–4(c)(5) control the appellant's argument. This section states, in part:

> ... Liability shall not be construed to exist under another section of this code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision *may sue and be sued.*

(Emphasis added.)

Furthermore, the language of Syllabus Point 2 of *Marlin, supra,* is not inconsistent with these tenants of statutory construction; *Marlin* makes it clear that liability is not favored when "... the legislature has *clearly* provided immunity...." (Emphasis added.)

■ We therefore find that the foregoing language of the Act is clear and unambiguous and states an intention by the Legislature to extend the application of the Act to public service districts such as the Elkins Road Public Service District, regardless of the general authorization for public service districts to "sue and be sued" as contained in *W.Va.Code,* 16–13A–3. To construe the statutory scheme otherwise would undermine the general purposes of the Act and contravene the statute's clearly-expressed directive.

The second assignment of error relied upon by the appellant on appeal is that the trial court erred in dismissing appellant's case because appellant alleged malicious and intentional actions of the PSD, in addition to negligence. The appellant argues that in dismissing his claims based on intentional and malicious acts, the trial court rulings were "illogical," "unjust," and "unfair." The appellant also argues that the trial court committed error with respect to the dismissal of the appellant's negligence claim since exposure to liability is imposed for negligent performance of acts of employees while act-

ing within the scope of employment under *W.Va.Code,* 29–12A–4(c)(2).[2]

The trial court concluded that the appellant's complaint alleged that the PSD's actions were done with "malicious purpose, in bad faith, or in a wanton or reckless manner." The trial court did not find that the appellant was claiming anything except intentional acts of the PSD. The trial court made its findings following the "heightened pleading" procedures set forth in *Hutchison v. City of Huntington, supra.*

An analysis of the application of the immunity provisions in *W.Va.Code,* 29–12A–4(b)(1) and 5(a)(9) is required to determine whether the PSD has immunity in the instant case. The language of *W.Va.Code,* 29–12A–4(b)(1) and 5(a)(9) must be considered together prior to concluding that liability may attach to a political subdivision under *W.Va.Code,* 29–12A–4(c)(2).

*W.Va.Code,* 29–12A–4(b)(1) provides that:

Except as provided in subsection (c) of this section, *a political subdivision is not liable* in damages in a civil action for injury, death or loss to persons or property allegedly caused by *any act or omission* of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function: Provided, That this article shall not restrict the availability of mandamus, injunction, prohibition, and other extraordinary remedies.

(Emphasis added.)

This provision of the Act suggests that political subdivisions, public service districts included, are not liable for any acts with respect to both governmental and proprietary functions unless the acts complained of come within the specific liability provisions of *W.Va.Code,* 29–12A–4 (c). In creating the general grant of immunity, in *W.Va.Code,* 29–12A–4(b)(1), the Legislature did not distinguish between intentional or unintentional acts, but instead used the term "any" as an adjective modifying "act or omission." To eliminate doubt regarding whether the

Legislature intended to include immunity for intentional acts, we need to consider our holding in Syllabus Point 2 of *Thomas v. Firestone Tire & Rubber Co.,* 164 W.Va. 763, 266 S.E.2d 905 (1980). In *Thomas* we held that "[t]he word 'any', when used in a statute, should be construed to mean any." We therefore conclude that claims of intentional and malicious acts are included in the general grant of immunity in *W.Va.Code,* 29–12A–4(b)(1). Only claims of negligence specified in *W.Va.Code,* 29–12A–4(c) can survive immunity from liability under the general grant of immunity in *W.Va.Code,* 29–12A–4(b)(1).

Furthermore, certain claims of negligence may be subject to one of the specific immunity provisions of *W.Va.Code,* 29–12A–5. Bare allegations of negligence claims based on employee negligence alone do not remove the cloak of immunity provided to the PSD because of specific grants of immunity in *W.Va. Code,* 29–12A–5.

*W.Va.Code,* 29–12A–5(a) specifies seventeen instances in which political subdivisions have immunity from tort liability. The applicable grant of immunity in this case is *W.Va. Code,* 29–12A–5(a)(9), which states:

(a) A political subdivision is immune from liability if a loss or claim results from:

. . .

(9) Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority. . . .

This Court interpreted this specific *Code* provision in Syllabus Point 5 of *Hose v. Berkeley County Planning Commission,* 194 W.Va. 515, 460 S.E.2d 761 (1995) where we held:

*W.Va.Code,* 29–12A–5(a)(9) [1986] clearly contemplates immunity for political subdivisions from tort liability for *any* loss or claim resulting from licensing powers or

---

**2.** *W.Va.Code,* 29–12A–4(c)(2) [1986], states:

Political subdivisions are liable for injury, death, or loss to persons or property caused by

the negligent performance of acts by their employees while acting within the scope of employment.

functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority, regardless of the existence of a special duty relationship.

(Emphasis added.)

The *Hose* Court went on to state that

... pursuant to *W.Va.Code*, 29–12A–4(c)(2) [1986] and *W.Va.Code*, 29–12A–5(a)(9) [1986] apolitical subdivision is immune from liability ... *regardless* of whether such loss or claim is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment.

*Hose, supra,* 194 W.Va. at 521, 460 S.E.2d at 767. (Emphasis added.)

 *Hose* discussed the interplay between the provisions of *W.Va.Code*, 29–12A–4, which imposes liability in limited circumstances, and the provisions of *W.Va.Code*, 29–12A5, which grants specific immunities to political subdivisions. The rationale for the Court's holding in *Hose* is that *W.Va.Code*, 29–12A–4(c)(2) is expressly "[s]ubject to sections five [*W.Va.Code*, 29–12A–5] ... of this article." There is no language in *W.Va.Code*, 29–12A–5 which distinguishes between intentional and negligent acts. When a political subdivision is exercising its "licensing powers or functions" as contemplated in *W.Va.Code*, 29–12A5(a)(9), the political subdivision is immune from liability regardless of whether the claim at issue is based on negligent or intentional acts of the political subdivision's employees.

From our review of the record we find that the trial court properly concluded that appellant's allegations were based on intentional acts. We further find that the acts complained of are clearly associated with, related to, and result from the PSD's licensing and permitting functions. We therefore find that the acts of the PSD complained of by the appellant are included in *W.Va.Code*, 29–12A–5(a)(9), and when read in concert with the provisions of *W.Va.Code*, 29–12A–4(b)(1), the Elkins Road Public Service District has immunity from liability in this case.

### III.

Based on the foregoing, we affirm the decision of the trial court.

Affirmed.