**STATE OF WEST VIRGINIA**

**Jerry L. Cochran,**
**Plaintiff Below, Petitioner**

**FILED**
**November 7, 2019**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**v.      No. 18-0302 (Monongalia County, 17-C-430)**

**River Road Public Service District,**
**a public corporation and**
**political subdivision,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

A water line and pipe running to Petitioner Jerry Cochran's[1] (Mr. Cochran) home sprang a leak in 2013.  Mr. Cochran asked Respondent River Road Public Service District[2] (the District) to fix the water line and pipe and relocate his water meter.  The District refused to approve Mr. Cochran's requests, so he repaired the line and pipe himself.  He sued the District in 2017, alleging that it negligently, intentionally, and unlawfully refused his requests to repair the line and pipe and move the meter. The District moved for summary judgment of Mr. Cochran's claims, arguing that it did not have a duty to repair the line and pipe and that it was statutorily immune from liability.  The circuit court granted summary judgment to the District, and Mr. Cochran now appeals.

Upon consideration of the standard of review, the briefs, the record presented, and oral argument, the Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

### I.  Facts and Procedural History

Mr. Cochran sued the District in the Circuit Court of Monongalia County in November 2017.  He alleged that the District provided public water service to his house via a water line and pipe (the water line)[3] that crossed underneath a nearby road.  He also

---

[1] Mr. Cochran is represented by Michael D. Simms, Esq.

[2] River Road Public Service District is represented by J. Robert Russell, Esq. and Brian J. Warner, Esq.

[3] Mr. Cochran maintains that the water line is a "utility service line."  The District labels it as a "long service line."  According to Mr. Cochran, this distinction makes a difference under the Rules for the Government of Water Utilities, W. Va. C.S.R. §§ 150-7-1 to 150-7-8, eff. May 8, 2011.  If the water line is a utility service line, then under Mr. Cochran's

1

alleged that the water line sprang a substantial leak in July 2013 and that he asked the District to repair the leak and move his water meter to the side of the roadway closest to his property. The District refused, he claims, and told him that he was responsible for repairs to the water line and relocation of the meter.

Mr. Cochran alleged that the District owed him a duty under the Rules for the Government of Water Utilities, W. Va. C.S.R. §§ 150-7-5.3.1 and 150-7-4, effective May 8, 2011 (Rules for Water Utilities) to repair the water line and to move the meter, which it breached—negligently, intentionally, and unlawfully—by refusing to approve those requests.[4] Mr. Cochran claimed that the District violated a special duty of care to perform a nondiscretionary governmental function when it unlawfully and negligently denied his requests. He contended that the District's failure to approve his requests forced him to expend time, energy, and money to repair the water line and deprived him of water for a substantial period of time. He demanded compensatory damages, pre- and post-judgment interest, and attorney's fees from the District.

As Mr. Cochran acknowledged in his complaint, he and the District had wrangled over the water line and the 2013 leak before. In October 2013, Mr. Cochran filed a complaint with the Public Service Commission of West Virginia (the Commission) against the District that contained claims similar to those in his 2017 civil complaint.[5] Mr. Cochran and the District settled those claims in December 2013. Under that settlement, he agreed to pay a $350 tap fee and the District agreed to relocate the meter as he had requested. The District also agreed to take over the water line from the old meter location to the new meter location after Mr. Cochran conveyed the line to the District.

While Mr. Cochran's 2017 civil complaint against the District did not make reference to the 2013 settlement of his Commission complaint, the District brought it to the circuit court's attention in a December 2017 "Motion to Dismiss Complaint or, in the

theory, the District was obligated to repair it. If the water line is a long service line, as the District maintains, then repairs were Mr. Cochran's responsibility. We do not decide whether the water line is a utility service line or a long service line because that decision is not necessary to resolve Mr. Cochran's appeal. Additionally, we do not decide which version of the Rules for the Government of Water Utilities—1996, 2003, or 2011—is applicable to this case.

[4] Specifically, Mr. Cochran alleged in his complaint that the District "breached its duties when it negligently, intentionally and unlawfully denied [his] request to repair the water line and service pipe and move the water meter."

[5] The appendix record does not include Mr. Cochran's 2013 Commission complaint or a transcript of the December 2013 hearing at which the terms of the settlement were discussed. We base our descriptions of the Commission complaint and the settlement on the Recommended Decision of Administrative Law Judge Deborah Yost VanDervort, February 27, 2014 and the Commission Order on Reconsideration, July 29, 2014.

Alternative, Motion for Summary Judgment." In addition to seeking dismissal of Mr. Cochran's complaint on grounds of judicial estoppel and res judicata, the District argued that the Rules for Water Utilities did not impose a duty upon it to repair the water line and that, even if those regulations did, it was immune from liability for Mr. Cochran's claims under the West Virginia Governmental Tort Claims Act (the Act).[6]

In response, Mr. Cochran emphasized the allegations in his complaint and what he believed to be genuine issues of material fact. Mr. Cochran also responded to the District's immunity argument. He highlighted a portion of the Act that he argued exempted his claims from its effect as well as his allegation that the District owed him a special duty. Finally, Mr. Cochran argued that neither judicial estoppel nor res judicata barred his claims against the District.

The circuit court granted the District's motion on March 9, 2018. The court found that under the applicable Rules for Water Utilities, Mr. Cochran was responsible for the repairs to the water line, the District was under no duty to repair it, and his negligence claim failed. The circuit court then found that Mr. Cochran was trying to "relitigate the same issues he alleged in his complaint to [the Commission] that were addressed and compromised," and that he could not pursue damages "that he agreed to forego under the terms of his agreement with the [District]" by way of a civil suit. The court granted the District's motion and ordered the case removed from its active docket. This appeal followed.

## II. Standard of Review

"A circuit court's entry of summary judgment is reviewed *de novo.*"[7] So, we apply the same standard on appeal as the circuit court applied. This means that we will affirm the circuit court's grant of summary judgment to the District "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [the District] is entitled to a judgment as a matter of law."[8]

---

[6] West Virginia Code §§ 29-12A-1 to 18 (2018).

[7] Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

[8] W. Va. R. Civ. P. 56(c). The District sought dismissal of Mr. Cochran's claim under West Virginia Rule of Civil Procedure 12(b)(6) or under Rule 56 should the circuit court deem it necessary to consider documents extrinsic to the complaint, that is the two Commission orders attached to the District's motion. The circuit court's order includes both the Rule 12(b)(6) and Rule 56(c) standards for dismissal but does not specify which the court applied.

On appeal, Mr. Cochran asks that we treat the circuit court's order as one under Rule 56(c) and to review the proceedings before the circuit court *de novo*. The District does not

3

## III.  Discussion

Mr. Cochran argues that the circuit court prematurely granted summary judgment to the District.  He claims that the circuit court ignored several disputed issues of material fact, including whether the leaking water line was located on his own property or in the District's utility right-of-way, whether the water line was a long service line that he owned or a utility service line owned by the District, and the location of the leak in relation to his point of service.  Those disputed facts are material, Mr. Cochran claims, because they bear on whether the District owed Mr. Cochran a legal duty to repair the leak under the Rules for Water Utilities.[9]  He also argues that his 2013 settlement with the District before the Commission does not bar his claims in this case.

The District responds that the circuit court did not make erroneous findings of fact in its March 9, 2018 order.  Instead, the District contends that the circuit court properly relied on Mr. Cochran's admissions in the Commission proceeding to find that he is estopped from taking a position inconsistent with those admissions or the parties' settlement of Mr. Cochran's Commission case.  The District asserts that the circuit court correctly applied the 2003 and 2011 Rules for Water Utilities to Mr. Cochran's earlier admissions to find that he, and not the District, was responsible to repair the leaking water line.  The District also argues that it is immune from liability for Mr. Cochran's alleged damages under the Act.

While the circuit court did not address statutory immunity in its final order, the parties briefed and argued the issue extensively, below.  And, as we have previously noted, "it is permissible for us to affirm the granting of summary judgment on bases different or grounds other than those relied upon by the circuit court."[10]  In this particular case, statutory immunity is not an issue raised by the District for the first time on appeal and consideration of it does not place either party at a disadvantage.[11]  So, we may consider the District's statutory immunity argument and, indeed, affirm the circuit court's order on that basis.

---

object to Mr. Cochran's request. So, we review the circuit court's March 9, 2018 order under the Rule 56(c) standard.

[9] W. Va. C.S.R. §§ 150-7-1 to 150-7-8, eff. May 8, 2011.

[10] *Gentry v. Mangum*, 195 W. Va. 512, 519, 466 S.E.2d 171, 178 (1995).

[11] *But cf. Whitlow v. Bd. of Educ. of Kanawha Cty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("Our general rule . . . is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal. . . .  Moreover, we consider the element of fairness.  When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. . . .") (citations omitted).

### A. *Mr. Cochran's Intentional Tort Claim*

Mr. Cochran claims that the District intentionally breached its duty under the 2011 Rules for Water Utilities to approve his request to repair the water line. We previously examined an intentional tort claim made against a public service district in *Zirkle v. Elkins Road Public Service District*.[12] There, Mr. Zirkle alleged that the Elkins Road Public Service District (PSD) intentionally denied his request to extend water service to his home when it erroneously concluded that his home was outside the PSD service area.[13] Undeterred, Mr. Zirkle continued to request service from the PSD, satisfying each precondition to service it imposed.[14] The PSD still denied Mr. Zirkle's requests. He complained to the Commission and it ordered the PSD to extend a service line to his home.[15]

Mr. Zirkle filed a civil suit against the PSD "basically for what [he] perceived as all the hassle he incurred in securing water service to his residence."[16] The circuit court found that Mr. Zirkle had not alleged anything other than intentional acts by the PSD and dismissed the claim.[17]

On appeal, this Court applied the plain language of West Virginia Code § 29-12A-4(b)(1) (2018) to affirm the dismissal of Mr. Zirkle's intentional tort claim against the PSD. That statute states:

> *Except as provided in subsection (c) of this section*, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by *any act or omission* of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. . . .[18]

As we explained in *Zirkle*, § 29-12A-4(b)(1)

> suggests that political subdivisions, public service districts included, are not liable for any acts with respect to both governmental and proprietary functions unless the acts

---

[12] 221 W. Va. 409, 655 S.E.2d 155 (2007).

[13] *Id.* at 411, 655 S.E.2d at 157.

[14] *Id.* at 411–12, 655 S.E.2d at 157–58.

[15] *Id.* at 412, 655 S.E.2d at 158.

[16] *Id.*

[17] *Id.* at 414. *Zirkle* does not elaborate upon the circuit court's reason for dismissal.

[18] W. Va. Code § 29A-12-4(b)(1) (emphasis added).

complained of come within the specific liability provisions of *W.Va.Code*, 29–12A–4 (c). In creating the general grant of immunity, in *W.Va.Code*, 29–12A–4(b)(1), the Legislature did not distinguish between intentional or unintentional acts, but instead used the term "any" as an adjective modifying "act or omission." To eliminate doubt regarding whether the Legislature intended to include immunity for intentional acts, we need to consider our holding in Syllabus Point 2 of *Thomas v. Firestone Tire & Rubber Co.*, 164 W.Va. 763, 266 S.E.2d 905 (1980). In *Thomas* we held that "[t]he word 'any', when used in a statute, should be construed to mean any." We therefore conclude that claims of intentional and malicious acts are included in the general grant of immunity in *W.Va.Code*, 29–12A–4(b)(1). Only claims of negligence specified in *W.Va.Code*, 29–12A–4(c) can survive immunity from liability under the general grant of immunity in *W.Va.Code*, 29–12A–4(b)(1).[19]

Applying that rationale here, we conclude that § 29-12A-4(b)(1) immunizes the District from liability for Mr. Cochran's intentional tort claim. That statute provides that "political subdivisions, public service districts included, are not liable for any acts with respect to both governmental and proprietary functions *unless the acts complained of come within the specific liability provisions of W.Va.Code*, *29–12A–4 (c)*."[20] Mr. Cochran's claim that the District intentionally breached its duty under Commission regulations to repair the water line and move the meter does not fall within any of the specific liability provisions found in West Virginia Code § 29-12A-4(c)(1) to (4) (2018).[21] Each of those

---

[19] *Zirkle*, 221 W. Va. at 414, 655 S.E.2d at 160.

[20] *Id*. (emphasis added).

[21] West Virginia Code § 29-12A-4(c) states:

> (c) Subject to sections five [§ 29-12A-5] and six [§ 29-12A-6] of this article, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

> (1) Except as otherwise provided in this article, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any vehicle by their employees when the employees are engaged within the scope of their employment and authority.

6

provisions imposes liability upon political subdivisions for negligent acts, not intentional ones. So, Mr. Cochran's intentional tort claim cannot survive the general grant of immunity in § 29-12A-4(b)(1), as a matter of law. For that reason, we affirm the circuit court's dismissal of Mr. Cochran's claim that the District intentionally breached a duty to repair the water line and move the meter.

## B.    Mr. Cochran's Negligence Claim

We turn next to Mr. Cochran's negligence claim. He contends that § 29-12A-4(c)(2) shields that claim from the general grant of immunity found in § 29-12A-4(b)(1). Section 29-12A-4(c)(2) states:

(2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

(3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance, except that it is a full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge.

(4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility.

(5) In addition to the circumstances described in subsection (c)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a provision of this code. Liability shall not be construed to exist under another section of this code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued.

(c) Subject to sections five [§ 29-12A-5] and six [§ 29-12A-6] of this article, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows: . . . (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

Under its plain terms, § 29-12A-4(c) is subject to West Virginia Code § 29-12A-5 (2018). So, even if a political subdivision is subject to civil damages under § 29-12A-4(c), that liability may be limited by § 29-12A-5. Under § 29-12A-5(a)(9),

(a) A political subdivision is immune from liability if a loss or claim results from: . . . (9) Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority . . . .[22]

Looking to *Zirkle* once again, we found there that § 29-12A-5(a)(9) immunized the PSD from Mr. Zirkle's negligence claim because "the acts [he] complained of are clearly associated with, related to, and result from the PSD's licensing and permitting functions."[23] Mr. Cochran complains of analogous acts by the District. Like Mr. Zirkle, Mr. Cochran asked the District to issue an approval. In Mr. Zirkle's case, he asked the PSD to approve his request for a line extension which the PSD refused because it concluded that his home was outside the PSD service area. In Mr. Cochran's case, he asked the District to approve his request to repair the water line and to relocate the meter—actions that, in the District's view, would have extended their responsibilities beyond that required by the Rules for Water Utilities. In short, both Mr. Zirkle and Mr. Cochran sought damages in negligence

---

[22] W. Va. Code § 29-12A-5(a)(9). Syl. Pt. 4, *Hose v. Berkeley Cty. Planning Comm'n*, 194 W. Va. 515, 460 S.E.2d 761 (1995) ("Pursuant to *W.Va.Code,* 29–12A–4(c)(2) [1986] and *W.Va.Code,* 29–12A–5(a)(9) [1986], a political subdivision is immune from liability if a loss or claim results from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority, regardless of whether such loss or claim is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment.").

[23] *Zirkle*, 221 W. Va. at 415, 655 S.E.2d at 161.

for the PSD's and the District's refusals to issue an approval of their requests for service.[24] And as we found in *Zirkle*, § 29-12A-5(a)(9) immunizes the District from liability in negligence for that refusal.

We acknowledge Mr. Cochran's argument that the circuit court granted summary judgment prematurely and that he needed additional discovery on his claims. To that end, he identified several disputed issues of fact in his response to the District's motion. Assuming that those factual issues are genuinely disputed, they are not facts that are material to our immunity determination.[25] Section 29-12A-5(a)(9) immunizes the District from liability to Mr. Cochran for either failing or refusing to issue an approval for his request for service. So, the location of the water line, its designation as a long service line or utility line, and the location of the leak relative to the point of service are immaterial factual issues that do not preserve Mr. Cochran's claims from summary disposition on statutory immunity grounds.

For those reasons, we affirm the Circuit Court of Monongalia County's Order Granting Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment of March 9, 2018. Because we have found that the District is entitled to judgment as a matter of law under West Virginia Rule of Civil Procedure 56(c), we remand this case to the circuit court for entry of an order granting judgment in favor of the District and dismissing Mr. Cochran's claims with prejudice.[26]

Affirmed and remanded with instructions.

**ISSUED:**     November 7, 2019

---

[24] *See* W. Va. Code § 29-12A-5(a)(9) (immunizing a political subdivision from liability if a loss or claim results from "[l]icensing powers or functions including, but not limited to, the . . . failure or refusal to issue . . . any approval . . . .").

[25] *See* Syl. Pt. 1, in part, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996) (holding that "unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.").

[26] *See Easterling v. American Optical Corp.*, 207 W. Va. 123, 129, 529 S.E.2d 588, 594 (2000) (quoting Syl. Pt. 1, in part, *Poling v. Belington Bank, Inc.*, 207 W. Va. 145, 529 S.E.2d 856 (1999) ("If a summary judgment is entered under Rule 56 R.C.P. it is a dismissal with prejudice; whereas, a judgment sustaining a motion to dismiss under Rule 12(b) R.C.P. is not a dismissal with prejudice."), *abrogated on other grounds by Forshey v. Jackson*, 222 W. Va. 743, 671 S.E.2d 748 (2008)). *See also Litig. Handbook on West Virginia Rules of Civil Procedure* 1295 (2017) ("The entry of an order granting summary judgment constitutes a dismissal with prejudice.").

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING AND WRITING SEPARATELY:**

Justice Margaret L. Workman

**WORKMAN, J., dissenting:**

   I dissent to the majority's affirmance of the circuit court's dismissal of this case on grounds not addressed by the trial court—statutory immunity. A long-established precept of appellate jurisdiction states that "this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syl. Pt. 1, *Mowery v. Hitt*, 155 W. Va. 103, 181 S.E.2d 334 (1971). As the Court has explained with respect to this well-settled rule, "there is [] a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom." *Whitlow v. Bd. of Educ. of Kanawha Cty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993). This case exemplifies precisely why such a well-accepted principle of appellate review exists.

   The circuit court's order in no way mentions statutory immunity; accordingly, petitioner's brief appealing this order understandably fails to address this ground. In fact, respondent River Road PSD ("the PSD") readily concedes that the circuit court did not rule on this issue. Irrespective of the fact that this issue may have been discussed tangentially below, the fact remains that the circuit court did not dismiss the case on this basis and it is scarcely mentioned before this Court.[27] The Court has made clear

_____

[27] Instead, the parties focus almost exclusively on the concept of judicial estoppel—*which the circuit court likewise did not rule upon*—arguing whether petitioner is precluded from disclaiming responsibility for the water line after having "conveyed" the water line in settlement of his PSC claim. However, the upshot of the circuit court's order is that petitioner could not bring his claim having previously settled with the PSC:

> Plaintiff is now attempting to *relitigate* the same issues he alleged in his complaint to the PSC that were *addressed and compromised*. . . . Plaintiff *agreed to resolve his claims* with the RRPSD and both he and the RRPSD have *met and fulfilled their settlement obligations*. . . . Plaintiff cannot now ask this

10

that it does not exist for the purpose of "concoct[ing] or resurrect[ing] arguments neither made nor advanced by the parties." Syl. Pt. 11, in part, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014). The majority's eagerness to dispose of this wholly underdeveloped and legally infirm appeal is a gross overstep of its jurisdiction.

The majority assuages its jurisdictional overstep by assuring itself that the Court has held that *summary judgment* may be affirmed on grounds other than those identified by the lower court. The basis for this limited exception to our jurisdictional rule is obvious: our review on appeal of summary judgment is *de novo* and the Court has the benefit of a full record. No such record exists here because the circuit court did not permit full discovery and in fact dealt with the PSD's motion as a *motion to dismiss*. While the majority relies on the dual caption of the PSD's motion to treat it as one for summary judgment, plainly the circuit court did not. In the hearing on the PSD's motion, the circuit court stated "So what's going to happen *when we finish discovery* and we go down the road and *this comes back on a motion for summary judgment*?" (emphasis added).

Even in improperly treating this as an appeal from a grant of summary judgment, the majority ignores one of our most well-established summary judgment principles: "[B]oth this Court and the United States Supreme Court apply the general principle that summary judgment is appropriate only after the opposing party has had 'adequate time for discovery.'" *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 61, 459 S.E.2d 329, 338

---

Court to award *damages that he agreed to forego under the terms of his agreement with the Defendant*.

(emphasis added). Although the circuit court did not properly identify the legal concept it was attempting to articulate—accord and satisfaction—certainly at no point in the order was judicial estoppel mentioned or alluded to. Accordingly, this issue was likewise not considered by the lower court and does not form a proper basis to affirm. Moreover, as the parties conceded at oral argument, petitioner clearly may maintain a separate action for damages in circuit court irrespective of having lodged a complaint with the PSC. Therefore, the basic premise of the circuit court's dismissal was in error.

The lone issue reference in the circuit court's order which could have even arguably formed the basis of an affirmance is the PSD's lack of legal duty to repair or maintain the water line on the basis of the applicable regulations. However, the circuit court—and the parties for that matter—make nothing but conclusory statements regarding which regulations are applicable with inadequate analysis and support. Petitioner further credibly asserts that there exists a question of fact regarding the precise location of the leak—both property-wise and equipment-wise—which the current briefing (and certainly the order) unsatisfactorily resolves.

11

(1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In this case, one of petitioner's primary assignments of error is that *he was not permitted to conduct full discovery*.  To presume to dispose of a case without a developed record and on grounds not relied upon by the circuit court destroys any sense of judicial restraint and proper exercise of appellate review.  As the Fourth Circuit has noted:

> The purpose of standards of review is to focus reviewing courts upon their proper role when passing on the conduct of other decision-makers. Standards of review are thus an elemental expression of judicial restraint, which, in their deferential varieties, safeguard the superior vantage points of those entrusted with primary decisional responsibility. . . . *[S]tandards of review do matter, for in every context they keep judges within the limits of their role and preserve other decision-makers' functions against judicial intrusion.*

*Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 320–21, 326 (4th Cir. 2008) (emphasis added).

Substantively, the majority's analysis is equally lacking.  The parties herein debate the undisputed primary legal issue underlying petitioner's complaint:  whose responsibility was the repair of petitioner's leaking water line?  The circuit court and parties volley about various regulations and technical terms, implicitly conceding that the issue rises and falls with the location and nature of the faulty equipment and which regulations regarding its maintenance apply.  Unquestionably, petitioner seeks damages for the PSD's failure to maintain and/or repair the water line.  Neither the parties nor the circuit court were ever under a misapprehension as to what petitioner's complaint entails—the complaint plainly alleges that the PSD "had duties to repair plaintiff's water line" and a "nondiscretionary governmental function" to do so, which it breached.[28]  In the hearing before the circuit court, the court stated:  "[T]here's a question about what's legally required, but they're taking the position that you all had a duty to repair this line and you didn't repair it, therefore that's negligence."

---

[28] The PSD's brief expressly states that petitioner's complaint asserts that the PSD was "under a duty . . . to repair the line at its own expense[.]"  The circuit court likewise discusses in its order whether the PSD had a "duty to repair the section of pipe that was leaking[.]"  The fact that the majority and PSD have to distort petitioner's complaint to force it into an immune claim is evidenced by their telling language when recharacterizing his claim, i.e. "reduced to its essence . . ." and "Mr. Cochran's duty and causation allegations boil down to this theory . . . ."  Everyone except the majority understood perfectly what petitioner's claim was for:  the PSD's failure to repair and maintain the leaking water line and damages flowing therefrom.

12

Nevertheless, the majority fixates on petitioner's inclusion of allegations regarding his "requests" for the PSD to repair the water line (as he alleges was their duty) and his contention that the refusal of those "requests" is likewise a breach of its duty to repair and maintain. On this contrived and thin reed, the majority therefore concludes that his complaint is actually one for "refusal of requests to repair"—which is an allegedly proprietary function for which it is immune, rather than the *failure to repair*—which is classic negligence for which it is *not* immune.[29] Therefore, it concludes that the PSD is entitled to statutory immunity. This is hair-splitting of the highest order and, again, disregards well-established principles regarding the construction of complaints: "Complaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995).

The majority employs these machinations in order to pigeon-hole this case into the fact pattern in *Zirkle v. Elkins Road Public Service District*, 221 W. Va. 409, 655 S.E.2d 155 (2007). In *Zirkle*, the appellant requested water service after his well became contaminated; he perceived that the PSD was unnecessarily delaying his service and filed suit for "all the hassle he incurred in securing water service to his residence." *Id.* at 412, 655 S.E.2d at 158. The Court found that the decision to provide water service goes to the PSD's licensing and permitting functions and was therefore immune pursuant to West Virginia Code § 29–12A–5(a)(9), which specifically provides immunity for "licensing powers or functions."

The majority finds petitioner's claim for property damage as a result of the PSD's failure to repair and maintain the water line "analogous" to *Zirkle* because he had the temerity to include in his complaint that he asked the PSD to "approve" his "request" to pay for the damages for which he claims it is liable. Again, this is chicanery. If a person is injured by the negligent operation of a vehicle by a political subdivision's employee (for which there is plainly no immunity[30]), requesting the political subdivision to pay for the damages hardly transforms the claim into one challenging the "refusal" of the "request."

_____

[29] *See* W. Va. Code § 29-12A-4(c)(1 through 4) (stripping political subdivisions of statutory immunity for negligent operation of vehicles, negligent performance of acts by employees, negligent failure to keep public roads, highways, streets, etc., and negligence of employees in public places).

[30] *See* W. Va. Code § 29-12A-4 ("[P]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any vehicle by their employees when the employees are engaged within the scope of their employment and authority.").

13

By delving into an issue neither ruled upon by the trial court nor properly before this Court, the majority not surprisingly manages to overlook and fail to explore the most obvious potential impediment to statutory immunity. West Virginia Code § 29-12A-4 expressly provides that political subdivisions are liable for failure to maintain "aqueducts" in good repair: "*Political subdivisions are liable* for injury, death, or loss to persons or property *caused by their negligent failure to keep* public roads, highways, streets, avenues, alleys, sidewalks, bridges, *aqueducts*, viaducts, or public grounds within the political subdivisions open, *in repair,* or free from nuisance[.]" *See Calabrese v. City of Charleston*, 204 W. Va. 650, 657, 515 S.E.2d 814, 821 (1999) (finding sewer line an "aqueduct" under the statute and agreeing that term refers to "conduit for water").

The majority's attempt to reverse engineer a proper dismissal of this case is inexplicable, but is becoming a recurrent pattern. As stated in my dissent in *State ex rel. Universal Underwriters Insurance Company v. Wilson*, 241 W. Va. 335, 355, 825 S.E.2d 95, 115 (2019):

> In my almost twenty-three years as an appellate court judge, one thing I have learned is that the development of new law by a judicial body is a lot better when, like a good stew, it is cooked slowly and thoroughly. The full processing of a . . . legal issue by its being fully considered by a lower court, a lower court making a ruling, the parties then briefing and arguing the issue at the appellate level results in much sounder law and much fairer results[.]

(Workman, J., dissenting). *See also State ex rel. Gallagher Bassett Servs., Inc. v. Webster*, 242 W. Va. 88, 829 S.E.2d 290, 301 (2019) (discouraging premature resolution of "legal issues that hinge on facts" in prohibition). Were statutory immunity as obvious grounds for dismissal as the majority believes, surely the circuit court would have simply dismissed on that basis.[31] There is simply no adequate basis upon which to affirm the dismissal of petitioner's claim at this juncture given the undeveloped record, inadequate order, and "moving target" legal issues the parties have pursued.

Some members of the majority frequently tout their adherence to the rule of law and the importance of judicial restraint. Once again, however, they give no respect to either concept. Accordingly, I respectfully dissent.

---

[31] A simple reversal and remand would, in fact, allow the circuit court to properly visit this issue and render a ruling susceptible of appellate review.

14