No. 21-1001, *City of Wheeling v. The Public Service Commission of West Virginia and the City of Benwood*

Walker, J., dissenting:

The majority says that the word "toll" in West Virginia Code § 24-2-1(b)(6) is ambiguous because the Legislature has not defined it. Respectfully, I disagree. The Legislature did not define "toll" because it didn't have to.[1] "Toll" means "to stop the running of; to abate . . . ."[2] So, under § 24-2-1(b)(6), the Commission has 120 days to resolve a complaint from the date a customer like Benwood files one; but, the Commission can stop the running of that clock until it receives the information it needs to understand the basis of the challenged rates, fees, and charges.[3]

---

[1] " 'In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings.' Syl. pt. 1, *Tug Valley Recovery Center v. Mingo County Commission*, 164 W.Va. 94, 261 S.E.2d 165 (1979)." Syl. Pt. 1, *Thomas v. Firestone Tire & Rubber Co.*, 164 W. Va. 763, 266 S.E.2d 905 (1980).

[2] TOLL, BLACK'S L. DICT. (11th ed. 2019).

[3] In pertinent part, § 24-2-1(b)(6) states:

> Provided, That any request for an investigation related to a dispute that is based on the act or omission of the political subdivision shall be filed within 30 days of the act or omission of the political subdivision and the Commission shall resolve the dispute within 120 days of filing. The 120-day period for resolution of the dispute may be tolled by the Commission until the necessary information showing the basis of the rates, fees, and charges or other information required by the Commission is filed . . . .

The Commission shared that understanding of the tolling provision, at least until October 26, 2021. The record is clear that the Commission initially ran the 120-day clock in line with Wheeling's position—that it starts on the date the request for investigation is filed. On June 2, 2021, the Commission tolled the decision due date by 45 days. While the June 2 order didn't specify a date by which the Commission had to resolve the investigation of Wheeling's ordinance, the docket sheet entry for June 2 did:

> 6/2/2021     Commission order referring to ALJ for decision by 9/5/2021; Staff Report due 7/23/2021; that as soon as possible but no later than 30 days from the date of this Order, the City Wheeling [sic] shall file further support of its municipal ordinance and wholesale rates; *that running of the statutory period for resolution of the complaint is tolled for a period of 45 days, resulting in a statutory decision due date of 10/15/2021 . . . .*

So, as of June 2, 2021, the Commission calculated the decision due date to be October 15, 2021. How did it come up with that date? By adding 120 days to May 3, 2021 (the date Benwood filed its request for investigation) and then adding 45 days to that. Here's the arithmetic: May 3, 2021 (filing date) + 120 days (statutory deadline) + 45 days (first tolling) = October 15, 2021.

On July 22, 2021, the Commission tolled the decision deadline for thirteen more days, from October 15 to October 28. The tolling order tells us so: "The Commission concludes that it is reasonable to grant the request to (i) *toll the running of the statutory deadline from October 15, 2021, until October 28, 2021*." The docket sheet does, too: "July 22, 2021 Commission Order extending the ALJ Decision Due Date to 9/18/2021;

2

Joint staff memo due 8/5/2021; Staff Report due 8/5/2021 and *the running of the statutory due date is tolled until 10/28/2021*; etc." Again, here's the arithmetic: May 3, 2021 (filing date) + 120 days (statutory deadline) + 45 days (first tolling) + 13 days (second tolling) = October 28, 2021. Those docket entries and the July 22 order demonstrate that the Commission absolutely understood the Legislature's plain direction that the 120-day decision clock begins to tick on the day a customer like Benwood files a request for investigation and not once the Commission has received all information it deems necessary to resolve the matter.

The Commission changed its tune in the October 26, 2021 tolling order. There, the Commission concluded that under § 24-2-1(b)(6), it "*should* toll the statutory period of 120 days in this case from July 15, 2021, the date that Wheeling filed the necessary information showing the basis of the rates, fees, and charges and other information required by the Commission." Then, the Commission ordered a new decision date of November 12, 2021 (July 15, 2021 + 120 days[4]), based on a starting date unsupported by § 24-2-1(b)(6)—the date the Commission determines it has received from the defendant information necessary to understand the basis of the challenged rate.

The Commission's June 2, July 22, and October 26 tolling orders present another problem: in those orders, the Commission tolled the 120-day clock for reasons

---

[4] The Commission's October 26 recalibration of the starting date doesn't account for the 13-day tolling period imposed by the July 22, 2021 order.

unauthorized by § 24-2-1(b)(6). In the June 2 order, the Commission stated that "Wheeling [had] not include[d] the necessary information showing the basis of the rates, fees, and charges in the municipal ordinance that is necessary to allow the Commission to evaluate Benwood's complaint," gave Wheeling an additional *30 days* to do so, then tolled the running of the 120-day decision period for *45 days*. As Wheeling points out, the Commission has only the authority to toll the running of the decision period clock until "the necessary information . . . is filed," meaning that in the June 2 order, the Commission exceeded its tolling authority under § 24-2-1(b)(6) by 15 days. There is a similar problem with the July 22 tolling order. The Commission entered that tolling order in response to Commission staff's request for "a 13-day tolling of [the] case . . . to allow Staff time to review Wheeling's Revised Class Cost of Service Study." And, most importantly, the Commission ordered "the running of the statutory period for resolution of this matter . . . tolled 120 days from July 15, 2021" on October 26 in response to "the complexity of this case and need for additional time for Commission consideration and review . . . ." Later, the Commission shrugged off its earlier calculation of the decision due date, stating that "in its July 22, 2021 [o]rder, [it had] not invoke[d] its full authority to toll the decision due date by 120 days from the date Wheeling filed its Revised Study," i.e., July 15, 2021.

Even though this is a statutory interpretation case, those facts at the very least demonstrate that the Commission recognized and understood the plain language of the tolling provision in § 24-2-1(b)(6). The Commission applied that plain language until October 26, 2021, when—two days before the October 28 decision due date—it determined

4

that it needed more time "given the complexity of this case" and reset the start of the decision countdown to the date on which the Commission determined that it had enough information about Wheeling's ordinance. That just doesn't work because § 24-2-1(b)(6) says that the Commission "shall resolve the dispute within *120 days of filing*[.]" The statute does not say that the Commission shall resolve the dispute 120 days after the Commission decides that it has received sufficient information regarding the basis of the challenged rate. And, the statute does not say that the Commission may toll the running of the 120-day clock to permit it additional time to render a decision in a complex case. While that may seem harsh, it's an issue for the Legislature to address, not this Court.

The majority expresses concern that a defendant like Wheeling may "drag its feet" and run out the 120-day clock if the clock starts on the date of filing. That concern misunderstands the effect of the tolling provision. If the Commission tolls the 120-day clock for a permissible reason (i.e., to receive the information it needs to evaluate a complaint), it is not disadvantaged because the decision due date is necessarily postponed an equal length of time. For example, if the Commission tolls a decision due date by 30 days to gather necessary information, the original decision due date (date of filing + 120 days) is also postponed by 30 days (date of filing + 120 days + 30 days). As discussed above, that's exactly how the Commission ran the statutory clock until October 26.

The majority has also looked past the effect its construction of § 24-2-1(b)(6) will have on customers like Benwood. Under that statute, "the disputed rates, fees, and

5

charges fixed by the political subdivision providing separate or combined water and/or sewer services shall remain in full force and effect until set aside, altered or, amended by the commission in an order to be followed in the future." In other words, a customer like Benwood must pay the disputed rate until the Commission issues an order. It's completely logical that the Legislature would want to hold the Commission accountable to deal with these disputes swiftly by starting the 120-day decision clock when the customer files the complaint. Otherwise, the customer bears the financial brunt of delays *other* than those occasioned by the Commission's pursuit of information necessary to assess the basis for the challenged rate. The Legislature has imposed a 120-day decision period upon the Commission to ensure these disputes receive due attention, but also allows the Commission to stop the running of that clock to enable the Commission to obtain information necessary to resolve a customer complaint. The Legislature struck that balance with intention and care; the majority has now upended it.

For those reasons, I respectfully dissent. I am authorized to state that Justice Wooton joins in this dissenting opinion.