# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

FILED
June 17, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 20-0171

_____

C.C. AND J.C., AS NEXT FRIENDS OF THE MINOR CHILD M.C.,
Plaintiffs Below, Petitioners

V.

HARRISON COUNTY BOARD OF EDUCATION,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Harrison County
The Honorable Christopher J. McCarthy, Judge
Civil Action No. 19-C-236

AFFIRMED, IN PART; REVERSED, IN PART;
AND REMANDED WITH INSTRUCTIONS

_____

Submitted: April 20, 2021
Filed: June 17, 2021

Teresa C. Toriseva
Joshua D. Miller
Jacob J. Polverini
TORISEVA LAW
Wheeling, West Virginia
Loree Stark
American Civil Liberties Union
of West Virginia
Charleston, West Virginia
Attorneys for the Petitioners

Susan Llewellyn Deniker
Jeffrey M. Cropp
STEPTOE & JOHNSON PLLC
Bridgeport, West Virginia
Rodney L. Bean
STEPTOE & JOHNSON PLLC
Morgantown, West Virginia
Attorneys for the Respondent

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICES ARMSTEAD, HUTCHISON, and WOOTON concur, in part, and dissent, in part, and reserve the right to file separate opinions.**

**SYLLABUS BY THE COURT**

1.  "'Whether a complaint states a claim upon which relief may be granted is to be determined solely from the provisions of such complaint[.]' Syl. pt. 3, in part, *Barker v. Traders Bank*, 152 W. Va. 774, 166 S.E.2d 331 (1969)." Syllabus point 2, *Par Mar v. City of Parkersburg*, 183 W. Va. 706, 398 S.E.2d 532 (1990).

2.  "To recover in an action based on negligence the plaintiff must prove that the defendant was guilty of primary negligence and that such negligence was the proximate cause of the injury of which the plaintiff complains." Syllabus point 3, *Alexander v. Jennings*, 150 W. Va. 629, 149 S.E.2d 213 (1966).

3.  "Violation of a statute is *prima facie* evidence of negligence. In order to be actionable, such violation must be the proximate cause of the plaintiff's injury." Syllabus point 1, *Anderson v. Moulder*, 183 W. Va. 77, 394 S.E.2d 61 (1990).

**Jenkins, Chief Justice:**

The petitioners herein and plaintiffs below, C.C. and J.C. ("the Petitioners"),[1] as next friends of the minor child M.C. ("the child" or "the student"),[2] appeal from the January 27, 2020 order entered by the Circuit Court of Harrison County. By that order, the circuit court granted the motion to dismiss filed by the respondent herein and defendant below, the Harrison County Board of Education ("the Board") and dismissed the Petitioners' complaint. Before this Court, the Petitioners assign error to the circuit court's rulings and argue that their complaint asserted claims upon which relief could be granted. Upon a review of the parties' briefs and arguments, the appendix record, and the pertinent authorities, we affirm the circuit court's order dismissing the Petitioners' claims for negligent hiring and negligent supervision. We further affirm, in part, and reverse, in part, the circuit court's order dismissing the Petitioners' claim for negligence per se, and we reverse the circuit court's order dismissing the Petitioners' claim for negligent retention. Finally, we remand this case to the circuit court for further proceedings consistent with this opinion.

---

[1]Due to the sensitive nature of the facts at issue in this case, initials and titles will be used to refer to the parties and other individuals involved in the underlying events giving rise to the instant appeal. *See, e.g.*, *In re A.M.*, 243 W. Va. 593, 595 n.1, 849 S.E.2d 371, 373 n.1 (2020). *See also* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children).

[2]*See* note 1, *supra*.

# I.

## FACTS AND PROCEDURAL HISTORY

The Petitioners are the parents of the minor child[3] in this case, who is a student attending public high school in Harrison County, West Virginia. The student is transgender and identifies as male. Prior to the student's first year of high school, the Petitioners and officials from the public high school the student would be attending met, and the Petitioners informed the school officials of the student's identification as male and intention to use the boys' restrooms at school.

In late November 2018, after the instructional day had ended, the student, who is in the high school band and was preparing for a band trip later that afternoon, checked a boys' restroom at the school and, upon determining that it was empty, entered it. While the student was in a stall in the restroom, the school's Assistant Principal[4] entered the restroom; demanded the student exit the stall, expose his genitalia, and use a urinal; and blocked the student's exit from the restroom. After the student escaped from the restroom, the Assistant Principal followed the student into the hallway and said, loudly, "You freak me out"; this exchange was overheard by the parent of another band member who consoled the student after this incident. The next day, the Petitioners met with school and Board

---

[3]*See supra* note 1.

[4]*See* note 1, *supra*.

2

officials about this encounter and received assurances that the student and the Assistant Principal would not share the same space at school.[5]

Following this incident, the Assistant Principal was suspended,[6] but he was later reinstated. Approximately two weeks later, in December 2018, the student was scheduled to perform with the high school band at a basketball game, but stayed in the school's concession stand with his mother, C.C.,[7] until performance time because they had observed the Assistant Principal to be in attendance at the game. Despite the "stay away" agreement, the Assistant Principal stayed in close proximity to the concession stand, repeatedly stared at the student, and then escorted the band into the gymnasium for their performance. Thereafter, the Assistant Principal continued to be present in the school cafeteria during the student's lunch period.

In March 2019, after the bathroom and concession stand incidents had occurred, the Board voted not to renew the Assistant Principal's contract for the following

---

[5]The exact timing of this agreement is not apparent from the record, and it appears that at least two such meetings occurred between the Petitioners and school and Board officials that resulted in agreements between the parties. According to the Petitioners' complaint, one of these agreements provided, in part, that the school and the Board would "[e]nsure an environment exists where [the] Assistant Principal . . . [would] have little to no interaction with [the student]."

[6]Neither the timing nor the duration of the Assistant Principal's suspension is clear from the record.

[7]C.C. had volunteered to work in the school concession stand during this basketball game.

school year; eventually, though, the Board reversed its decision and voted to renew the Assistant Principal's contract. The Petitioners claim that the Assistant Principal's presence in the school cafeteria during the student's lunch period continued throughout the remainder of the school year. They further allege that the student has suffered emotional and physical illnesses, including anxiety, as a result of his interactions with the Assistant Principal but that his extracurricular activities require him to attend school in person rather than being homeschooled.[8] Therefore, the student remains enrolled at the same public high school for which the Board renewed the Assistant Principal's employment contract.

The Petitioners ultimately filed suit against the Board seeking damages for the student's injuries caused by the Assistant Principal's actions and the Board's response thereto.[9] The Board moved to dismiss the Petitioners' complaint for failure to state a claim upon which relief could be granted under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure,[10] and the circuit court granted its motion. The Petitioners now appeal the circuit court's dismissal of their complaint against the Board to this Court.

---

[8]It should be noted that, at the time of these events during the 2018-2019 school year, the current virtual and remote school attendance options that recently have been implemented in response to the COVID-19 global pandemic were not yet in existence.

[9]The Petitioners did not name the Assistant Principal as a defendant in their complaint.

[10]Rule 12(b)(6) of the West Virginia Rules of Civil Procedure permits a motion to dismiss a complaint based upon the "failure to state a claim upon which relief can be granted."

## II.

## STANDARD OF REVIEW

On appeal to this Court, the Petitioners assign error to the circuit court's order granting the Board's 12(b)(6) motion to dismiss their complaint for failure to state a claim upon which relief could be granted. "The purpose of a motion under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* is to test the sufficiency of the complaint." *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (per curiam).

> For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff. The trial court's inquiry will be directed to whether the allegations constitute a statement of a claim under Rule 8(a). A motion to dismiss for failure to state a claim is viewed with disfavor, particularly in actions to recover for personal injuries.

*Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 538, 236 S.E.2d 207, 212 (1977).

West Virginia Rule of Civil Procedure 12(b) further directs that a court presented with such a motion may consider only the pleadings when deciding whether to grant a motion to dismiss. *See* W. Va. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). In other words, "'[w]hether a complaint states a claim upon which relief may be granted is to be determined solely from the

provisions of such complaint[.]' Syl. pt. 3, in part, *Barker v. Traders Bank*, 152 W. Va. 774, 166 S.E.2d 331 (1969)." Syl. pt. 2, *Par Mar v. City of Parkersburg*, 183 W. Va. 706, 398 S.E.2d 532 (1990). Accordingly, upon a motion to dismiss, "the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true." *Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158 (1978). Thus, "[d]ismissal for failure to state a claim is proper [only] where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Murphy v. Smallridge*, 196 W. Va. 35, 36, 468 S.E.2d 167, 168 (1996) (internal quotations and citations omitted). Finally, where, as here, the circuit court, after considering these factors, has dismissed a complaint for failure to state a claim, we accord such decision a plenary review. *See* Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."). Guided by these principles, we proceed to consider the errors assigned by the Petitioners.

## III.

## DISCUSSION

Before this Court, the Petitioners contend that the circuit court erred by dismissing their complaint, in which they alleged eight claims for relief against the Board: "Count 1: False Imprisonment"; "Count 2: Assault"; "Count 3: Sexual Harassment"; "Count 4: Intentional Infliction of Emotional Distress"; "Count 5: Negligence Per Se"; "Count 6: Negligent Retention[,] Hiring[,] and Supervision"; "Count 7: Punitive

6

Damages – Harrison County Board of Education"; and "Count 8: Injunctive Relief to Prevent [the Assistant Principal] from Interaction with [the Student]." Although the circuit court's order of dismissal applied to the entirety of the Petitioners' complaint, they do not assign error on appeal to the dismissal of all of the above-described counts set forth in their complaint. Rather, the instant matter requires us to consider only whether the circuit court erred in dismissing the Petitioners' claims alleging negligence per se (Count 5) and negligent retention, hiring, and supervision (Count 6).[11] We will consider each of these claims in turn.

### A. West Virginia Tort Claims Act

Governing our assessment of the propriety of the circuit court's dismissal of these two negligence claims, as well as the circuit court's decision to dismiss these claims in the first instance, is the West Virginia Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act" or "the Act"), which "limit[s the] liability of political subdivisions and provide[s] immunity to political subdivisions in certain instances[.]" W. Va. Code § 29-12A-1 (eff. 1986). Included within the Act's definitional section is the meaning of

---

[11]In their brief to this Court, the Petitioners did not aver that the circuit court had erred by dismissing their claims for punitive damages (Count 7) or injunctive relief (Count 8), so those claims have never been before the Court on appeal. Moreover, during their oral argument, the Petitioners withdrew their assignments of error as to their intentional tort claims of false imprisonment (Count 1), assault (Count 2), sexual harassment (Count 3), and intentional infliction of emotional distress (Count 4). Accordingly, those issues are no longer before us for consideration, nor are the Petitioners' associated arguments pertaining to the need for further discovery regarding available insurance coverage for those claims or the Petitioners' allegations that federal law and/or constitutional claims were included in those counts.

"political subdivision," to which the Act applies, and which includes county boards of education, such as the Board in this case. *See* W. Va. Code § 29-12A-3(c) (eff. 1986).

Among the Tort Claims Act's provisions is the specific grant of immunity to political subdivisions, as well as the recognition that such entities may still be held liable in certain instances. Specifically, West Virginia Code section 29-12A-4 (eff. 1986) provides, in pertinent part:

> (b)(1) Except as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function[.]
>
> . . . .
>
> (c) Subject to sections five and six of this article, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> (1) Except as otherwise provided in this article, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any vehicle by their employees when the employees are engaged within the scope of their employment and authority.
>
> (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.
>
> (3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to

8

keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance, except that it is a full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge.

(4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility.

(5) In addition to the circumstances described in subsection[s] (c)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a provision of this code. Liability shall not be construed to exist under another section of this code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued.

W. Va. Code §§ 29-12A-4(b)(1), (c)(1-5). As referenced in West Virginia Code section 29-12A-4(c), West Virginia Code section 29-12A-5 (eff. 1986) further provides, in relevant part, that "[a] political subdivision is immune from liability if a loss or claim results from . . . [a]doption or failure to adopt a law, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy[.]" W. Va. Code § 29-12A-5(a)(4).[12]

---

[12]West Virginia Code section 29-12A-4(c) also references West Virginia Code section 29-12A-6, which provides certain limitations to claims filed under the Act, the provisions of which have not been challenged in the case sub judice. *See generally* W. Va. Code § 29-12A-6 (eff. 1986).

In dismissing the Petitioners' complaint, the circuit court relied upon this Court's prior decision in *Zirkle v. Elkins Road Public Service District*, 221 W. Va. 409, 655 S.E.2d 155 (2007) (per curiam), wherein we considered the language of West Virginia Code section 29-12A-4 of the Tort Claims Act and determined that political subdivisions, such as the Board in this case, have immunity from claims alleging intentional acts under the governing statutory language, but that political subdivisions still may be held liable for negligent conduct:

> This provision of the Act [*W. Va. Code*, 29-12A-4(b)(1)] suggests that political subdivisions, public service districts included, are not liable for any acts with respect to both governmental and proprietary functions unless the acts complained of come within the specific liability provisions of *W. Va. Code*, 29-12A-4(c). In creating the general grant of immunity, in *W. Va. Code*, 29-12A-4(b)(1), the Legislature did not distinguish between intentional or unintentional acts, but instead used the term "any" as an adjective modifying "act or omission." To eliminate doubt regarding whether the Legislature intended to include immunity for intentional acts, we need to consider our holding in Syllabus Point 2 of *Thomas v. Firestone Tire & Rubber Co.*, 164 W. Va. 763, 266 S.E.2d 905 (1980). In *Thomas* we held that "[t]he word 'any,' when used in a statute, should be construed to mean any." We therefore conclude that claims of intentional and malicious acts are included in the general grant of immunity in *W. Va. Code*, 29-12A-4(b)(1). *Only claims of negligence specified in W. Va. Code, 29-12A-4(c) can survive immunity from liability under the general grant of immunity in W. Va. Code, 29-12A-4(b)(1).*

221 W. Va. at 414, 665 S.E.2d at 160 (emphasis added).

Insofar as the two claims at issue on appeal both allege that the Board was negligent, the immunity provisions of the Tort Claims Act do not automatically preclude

10

the Petitioners' recovery. However, to overcome the Board's motion to dismiss these counts of their complaint, the Petitioners still must establish their entitlement to relief thereon. Within this framework, then, we review the circuit court's rulings.

## B. Negligence Per Se

The Petitioners first assign error to the circuit court's dismissal of their claim in Count 5 of their complaint for negligence per se. In their complaint, the Petitioners pled this claim in the alternative, which practice is permitted by our court rules. *See* W. Va. R. Civ. P. 8(a) ("Relief in the alternative or of several types may be demanded."). Specifically, the Petitioners alleged that the Board had failed to adopt an anti-harassment policy as required by West Virginia Code section 18-2C-3 or that, if the Board had adopted such a policy, its policy was inadequate. *See generally* W. Va. Code § 18-2C-3(a) (eff. 2011) (directing, in part, that "[e]ach county board shall establish a policy prohibiting harassment, intimidation or bullying" and specifying requisite components thereof). The circuit court found that the Petitioners had failed to state a valid claim in this regard, though, because West Virginia Code section 29-12A-5(a)(4) specifically provides that "[a] political subdivision is immune from liability if a loss or claim results from . . . [a]doption or failure to adopt a law, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy[.]" We agree with the circuit court's conclusion in this regard.

11

Here, although the Petitioners pled this count in the alternative, both of these allegations of negligence per se come within the statutory immunity afforded to political subdivisions by the Tort Claims Act. First, the Petitioners allege that the Board was negligent because it failed to adopt the policy that West Virginia Code section 18-2C-3 required it to adopt. However, section 29-12A-5(a)(4) of the Act specifically provides immunity for a political subdivision's "failure to adopt a . . . written policy[.]" Alternatively, the Petitioners claim that if the Board adopted the anti-harassment policy it was required to adopt, such policy was inadequate. This claim also is precluded by the Act's grant of immunity to political subdivisions because section 29-12A-5(a)(4) also provides immunity for a political subdivision's "[a]doption . . . [of] a . . . written policy[.]" Accordingly, because the Petitioners' allegations of negligence by the Board in this count pertain to its alleged failure to adopt an anti-harassment policy or adoption of an allegedly inadequate anti-harassment policy, both of which come within the ambit of the Act's grant of immunity to political subdivisions, we find that the circuit court did not err by dismissing this portion of Count 5 of the Petitioners' complaint alleging negligence per se.

However, this is not the end of our inquiry. In addition to the above-described allegations, the Petitioners averred yet a third manner in which the Board should be held liable for negligence per se:

> Further, the Defendant [the Board], if it has a policy regarding bullying, harassment[,] and intimidation, violated that policy when [the Assistant Principal] as its agent, employee, and representative committed the acts as aforementioned.

12

At all times material and relevant herein, [the Assistant Principal] was the assistant principal of [the] High School [the student attended][.]

Defendant Harrison County Board of Education was aware that this incident of harassment, bullying, and intimidation occurred between [the Assistant Principal] and [the student].

Defendant [the Board] was negligent *per se* in that the actions of its employee [the Assistant Principal] were the exact type of atrocious, inexcusable actions that W. Va. Code § 18-2C-1 *et seq.* was intended to prevent.

Defendant [the Board] breached its duty by failing to immediately act to address and remedy this situation.

As a direct and proximate result of Defendant HCBE's [the Board's] liability through its employee, agent, and representative [the Assistant Principal], [the student] suffered personal injuries and damages, including but not limited to suffering and mental anguish, past and future lost enjoyment of life, past and future humiliation, embarrassment, indignity, and shame, economic damages, diminished earning capacity, and future lost wages.

This conduct alleged in support of the Petitioners' negligence per se claim does not involve either the failure to adopt or the adoption of a policy for which immunity is afforded to the Board. *See* W. Va. Code § 29-12A-5(a)(4). Rather, these allegations sound in negligence and complement the allegations that the Board negligently retained the Assistant Principal once it became aware of his conduct set forth in Count 6 of the Petitioners' complaint and discussed *infra*. Because the Act does not afford immunity for negligence claims, the Petitioners' claim for negligence per se alleging the Board's violation of its policy is not automatically precluded by the Board's assertion of immunity. *See Zirkle*, 221 W. Va. at 414, 665 S.E.2d at 160.

13

Nevertheless, to survive the Board's motion to dismiss, the Petitioners still must state a valid claim upon which relief may be granted. *See* W. Va. R. Civ. P. 12(b)(6). In addition to asserting a valid claim, though,

> "the Court has made equally clear that complaints must minimally place a defendant on notice of the claim against it. West Virginia Rule of Civil Procedure 8(a)(2) requires a 'short and plain statement of the claim showing that the pleader is entitled to relief[.]' In that regard, the Court has explained that 'Rule 8 of the Rules of Civil Procedure requires clarity but not detail.' *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995). Moreover, we have observed that '[t]he primary purpose of these provisions is rooted in fair notice. Under Rule 8, a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is.' *Id.* (emphasis added)."

*Newton v. Morgantown Mach. & Hydraulics of W. Va., Inc.*, 242 W. Va. 650, 653, 838 S.E.2d 734, 737 (2019) (quoting *Malone v. Potomac Highlands Airport Auth.*, 237 W. Va. 235, 240, 786 S.E.2d 594, 599 (2015)).

Therefore, to assert a valid claim for negligence, the Petitioners were required to aver the elements of a negligence cause of action.

> In a negligence suit, a plaintiff is required to show four basic elements: duty, breach, causation, and damages. The plaintiff must prove that the defendant owed the plaintiff some duty of care; that by some act or omission the defendant breached that duty; and that the act or omission proximately caused some injury to the plaintiff that is compensable by damages. When we say that a defendant is "negligent," we are merely saying the defendant owed some duty of care to another yet failed to abide by that duty.

*Hersh v. E-T Enters., Ltd. P'ship*, 232 W. Va. 305, 310, 752 S.E.2d 336, 341 (2013) (footnotes omitted), *superseded by statute on other grounds as stated in Tug Valley Pharmacy, LLC v. All Plaintiffs Below in Mingo Cty.*, 235 W. Va. 283, 773 S.E.2d 627 (2015). *Accord Webb v. Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 118, 2 S.E.2d 898, 899 (1939) ("In every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish, by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes to him; (2) A negligent breach of that duty; (3) Injuries received thereby, resulting proximately from the breach of that duty."). We further have held that "[t]o recover in an action based on negligence the plaintiff must prove that the defendant was guilty of primary negligence and that such negligence was the proximate cause of the injury of which the plaintiff complains." Syl. pt. 3, *Alexander v. Jennings*, 150 W. Va. 629, 149 S.E.2d 213 (1966). Moreover, "[n]egligence may also be averred generally." W. Va. R. Civ. P. 9(b). Additionally, "[v]iolation of a statute is *prima facie* evidence of negligence. In order to be actionable, such violation must be the proximate cause of the plaintiff's injury." Syl. pt. 1, *Anderson v. Moulder*, 183 W. Va. 77, 394 S.E.2d 61 (1990). *Accord Somerville v. Dellosa*, 133 W. Va. 435, 439, 56 S.E.2d 756, 760 (1949) ("It is an established principle in this jurisdiction that the violation of a statute alone is sufficient to make the violator prima facie guilty of negligence." (citations omitted)).

Here, the allegations of negligence per se that the Petitioners set forth in their third iteration of this claim sufficiently state a cause of action for negligence to defeat the

Board's motion to dismiss as to Count 5 of the Petitioners' complaint. In support of their claim of negligence per se, the Petitioners alleged that the Board had a duty to the student to adopt an anti-harassment policy; the Board breached that duty by allowing the Assistant Principal's conduct in relation to the student to continue and that such actions constituted a violation of its duties vis-à-vis its anti-harassment policy; the student suffered injuries; and the Board's actions were the cause of the student's injuries. If accepted as true, these allegations are sufficient to state a claim for negligence per se. *See* W. Va. R. Civ. P. 8(a), 12(b)(6); *Lodge Distrib. Co.*, 161 W. Va. at 605, 245 S.E.2d at 158. Such averments also place the Board on notice as to the Petitioners' claim of negligence per se against it. *See* W. Va. R. Civ. P. 8(a), 9(b). And, the Petitioners' contentions further present an issue of whether the Board violated West Virginia Code section 18-2C-3(b)(8), which requires the Board's anti-harassment policy to include "[a] strategy for protecting a victim from additional harassment, intimidation or bullying, and from retaliation following a report," in light of the ongoing lunch room contact between the Assistant Principal and the student following the bathroom and concession stand incidents and the parties' alleged agreement that such interactions would cease. Therefore, we reverse the portion of the circuit court's order that dismissed Count 5 of the Petitioners' complaint in its entirety and remand for the reinstatement of that part of Count 5 that alleges negligence per se based upon the Board's alleged violation of its anti-harassment policy. We affirm the remainder of the circuit court's dismissal of Count 5 as it pertains to the Petitioners' contentions that the Board was negligent per se because it either failed to adopt an anti-harassment policy or

16

adopted an inadequate policy because both of these claims come within the Act's grant of immunity to subdivisions. *See* W. Va. Code § 29-12A-5(a)(4).

### C. *Negligent Retention, Hiring, and Supervision*

The second error assigned by the Petitioners concerns the circuit court's dismissal of Count 6 of the Petitioners' complaint in which they alleged causes of action for negligent retention, hiring, and supervision. Although the Petitioners intimated at oral argument that these three charges constitute a single claim, we find that each component has its own discrete elements such that three separate claims for relief are alleged in this count, and, therefore, we will consider whether the Petitioners' complaint sufficiently states a claim for relief as to each such issue.

In Count 6 of their complaint, the Petitioners alleged, in pertinent part, as follows:

> Defendant HCBE [the Board] possessed a duty to use reasonable care in the selection and retention of its respective employees.

> W. Va. Code § 18-2[C]-1 states that the Legislature finds that a safe and civil environment in school is necessary for students to learn and achieve high academic standards. The Legislature finds that harassment, intimidation or bullying, like other disruptive or violent behavior, is conduct that disrupts both a student's ability to learn and a school's ability to educates [*sic*] its students in a safe, nonthreatening environment. The Legislature further finds that students learn by example. The Legislature charges school administrators, faculty, staff and volunteers with demonstrating appropriate

17

behavior, treating others with civility and respect, and refusing to tolerate harassment, intimidation or bullying.

Defendant HCBE [the Board], [*sic*] knew or should have known that retaining and renewing the contract of an employee who falsely imprisoned, assaulted, sexually harassed, sexually abused, bullied, and further intimidated a student and minor child could result in harm to the child.

After [the Assistant Principal] committed the November incident, Defendant HCBE [the Board] reversed its earlier vote to allow [the Assistant Principal's] contract to expire and renewed [the Assistant Principal's] contract.

Subsequent to Defendant HCBE's [the Board's] vote to renew his contract, [the Assistant Principal] violated [*sic*] an [*sic*] would continuously appear during [the student's] lunch period to further intimidate, harass, and bully [the student].

Instead of protecting a student who suffered a traumatic event at the hands of an employee, Defendant HCBE [the Board] tolerated and rewarded [the Assistant Principal] with a new contract and enabled [the Assistant Principal's] ability to intimidate, harass, and bully [the student].

As a direct and proximate result of Defendant HCBE's [the Board's] negligent hiring, retention, and supervision, [the student] suffered personal injuries and damages, including but not limited to suffering and mental anguish, past and future lost enjoyment of life, past and future humiliation, embarrassment, indignity, and shame, economic damages, diminished earning capacity, and future lost wages.

We separately will address the circuit court's rulings as to these three alleged causes of action.

**1. Negligent Hiring.** The Petitioners contend that Count 6 of their complaint asserts a cause of action for negligent hiring, in essence claiming that the Board was

negligent in hiring the Assistant Principal. In assessing this claim, the circuit court observed that

> Plaintiffs [the Petitioners] . . . fail to allege that HCBOE [the Board] neglected to conduct a reasonable investigation into [the Assistant Principal] prior to his initial employment at [the high school the student attended] which would have made HCBOE [the Board] aware of prior misconduct by [the Assistant Principal]. All of Plaintiffs [*sic*] [the Petitioners'] allegations focus on the fact that HCBOE [the Board] "knew or should have known that retaining and renewing the contract of an employee who falsely imprisoned, assaulted, sexually harassed, sexually abused, bullied, and further intimidated a student and minor child could result in harm to the child." These allegations stir from the November 2018 incident, which occurred **after** [the Assistant Principal] was hired, and therefore the negligent hiring claim must fail as a matter of law.

(Emphasis in original). We agree with the circuit court's dismissal of the Petitioners' claim in Count 6 of their complaint for negligent hiring.

As noted above, to withstand a motion to dismiss, a complaint must set forth a claim upon which relief can be granted, W. Va. R. Civ. P. 12(b)(6), and provide sufficient notice to the defendant of the nature of the claim alleged, W. Va. R. Civ. P. 8(a). Here, as the circuit court duly noted, the complaint does not allege any facts regarding the Board's initial decision to hire the Assistant Principal or any irregularities attendant to the Assistant Principal's hiring. *See* Syl. pt. 2, *Par Mar*, 183 W. Va. 706, 398 S.E.2d 532. Therefore, the complaint fails to allege either facts sufficient to support a cause of action for negligent hiring or provide any notice whatsoever of the averment of this claim apart from the reference thereto in the title of Count 6. *See* W. Va. R. Civ. P. 8(a); *Chapman*, 160 W. Va.

19

at 538, 236 S.E.2d at 212. Accordingly, the Petitioners have failed to state a claim upon which relief may be granted for negligent hiring, and the circuit court's dismissal of that portion of Count 6 of the Petitioners' complaint pertaining to their negligent hiring claim is affirmed.

**2. Negligent Supervision.** The Petitioners next argue that the circuit court erred by dismissing their claim in Count 6 of their complaint for negligent supervision. In this respect, the Petitioners allege that the Board negligently supervised its employee, the Assistant Principal. The circuit court dismissed this claim based upon its analysis that the Petitioners had failed to state a valid claim for negligent supervision because they failed to plead facts sufficient to support such a claim. We agree with this conclusion, also.

In rendering its ruling, the circuit court explained that "[a] negligent supervision claim prevails when the party shows that the employer failed to supervise its employee, and as a result, the employee committed a negligent act and caused injury. *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W. Va. 128, 134, 538 S.E.2d 719, 725 (2000)[ (per curiam).]" The circuit court further noted that "'West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence.' *Carroll v. USAA Sav. Bank*, CV 3:16-11120, [2017] WL 811491, *1, *3 (S.D. W. Va. Mar. 1, 2017)[.]" (Additional citations omitted). Relying on these authorities, the circuit court then concluded that

20

> Plaintiffs [the Petitioners] fail to allege any conduct whatsoever that is negligent . . . all conduct performed by [the Assistant Principal] is intentional. . . . Plaintiffs' [the Petitioners'] negligent supervision claim fails because Plaintiffs [the Petitioners] have pleaded no set of facts in support of an underlying negligence claim which would entitle Plaintiffs [the Petitioners] to relief.

The circuit court's analysis finding that the Petitioners have failed to state a claim upon which relief could be granted as to their claim in Count 6 for negligent supervision is correct. Although our body of caselaw concerning negligent supervision is sparse, our current definition of this cause of action requires, as a predicate prerequisite of a negligent supervision claim against an employer, underlying conduct of the supervised employee that also is negligent. *See Taylor*, 208 W. Va. at 134, 538 S.E.2d at 725. In *Taylor*, we specifically recognized that "[t]he . . . claim of negligent supervision must rest upon a showing that the [employer] failed to properly supervise [its employee] and, as a result, [the employee] committed a negligent act which proximately caused the appellant's injury." *Id.* This definition of a negligent supervision claim in West Virginia also has been adopted by our federal courts. *See, e.g.*, *Launi v. Hampshire Cty. Prosecuting Attorney's Off.*, No. 3:19-CV-65, 2020 WL 4905740 (N.D. W. Va. Aug. 20, 2020) (memorandum opinion and order) ("'Plaintiffs alleging negligent supervision or training must first make an underlying showing of a negligence claim as to an employee, and then demonstrate that the employee was negligently trained or supervised.' *Taylor v. Cabell Huntington Hosp.*,

21

*Inc.*, 208 W. Va. 128[, 134], 538 S.E.2d 719, 725 (2000)[ (per curiam)].").[13]   Therefore,

under this Court's current construction of a negligent supervision cause of action, the

[13]*Accord Poling v. Wise Servs., Inc.*, No. 5:19CV238, 2019 WL 6174942, at *6 (N.D. W. Va. Nov. 20, 2019) (memorandum opinion and order) ("Plaintiff['s] . . . amended complaint does not contain sufficient allegations that defendant [employer] failed to properly supervise defendant [employee] and, that as a result, defendant [employee] committed a negligent act which proximately caused the plaintiff's injury." (citation to *Taylor* omitted)); *Casto v. Branch Banking & Tr. Co.*, No. CV 3:16-5848, 2018 WL 265586, at *10 (S.D. W. Va. Jan. 2, 2018) (memorandum opinion and order) ("[T]he Plaintiff must identify an underlying negligent act of an employee/agent. *See Carroll*, 2017 WL 811491, at *3. Only then may a Plaintiff seek to establish that the employer/principal negligently supervised or trained. *See Biser*, 211 F. Supp. 3d at 856 (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)[ (per curiam)]). A negligent supervision or training claim may not be based upon an underlying intentional act. *See Bourne*, 998 F. Supp. 2d at 506 ('When an employer negligently fails to supervise an employee, but such negligence does not result in a negligent act on the part of the employee that harms another, the failure to supervise did not proximately result in damages.'); *Heslep v. Ams. for African Adoption*, 890 F. Supp. 2d 671, 687 (N.D. W. Va. 2012) (finding allegations of intentional fraud not enough to plead underlying negligence); *Selders v. MegaCorp Logistics LLC*, No. 2:14-[CV]-60, 2014 WL 12638026, at *1 (N.D. W. Va. Dec. 22, 2014) (dismissing a negligent supervision claim when the underlying acts were intentional)."); *Huffman v. Branch Banking & Tr. Co.*, No. CV 3:16-8637, 2017 WL 2177351, at *7 (S.D. W. Va. May 17, 2017) (memorandum opinion and order) ("The complaint itself details only a negligence claim for supervision, but this type of action also fails as a matter of law. The Court thoroughly explains in *Carroll v. USAA Savings Bank* that West Virginia does not recognize a separate claim for negligent supervision or training without having a valid underlying claim for employee negligence. Civ. No. 3:16-11120, 2017 WL 811491, at *3 (S.D. W. Va. Mar. 1, 2017) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)[ (per curiam)]).")); *Carroll v. USAA Sav. Bank*, No. CV 3:16-11120, 2017 WL 811491, at *3 (S.D. W. Va. Mar. 1, 2017) (memorandum opinion and order) ("West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence. *See Heslep v. Ams. for African Adoption, Inc.*, 890 F. Supp. 2d 671, 687 (N.D. W. Va. 2012); *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)[ (per curiam)]. If a complaint fails to identify an employee's negligent act, the claim for negligent training or supervision should be dismissed as a matter of law. *See Taylor*, 538 S.E.2d at 725 ('While the appellant may be able to show that the hospital breached its duty to supervise [the nurse], absent a showing of negligence by [the nurse], the appellant is unable to show that the hospital's negligence proximately caused her injury.'). A plaintiff must 'first make an underlying showing of a negligence claim as to an employee, and then demonstrate that

the employee was negligently trained or supervised.' *Biser v. Mfrs. & Traders Tr. Co.*, No. 5:15-cv-15761, 2016 WL 5661390, at *8 (S.D. W. Va. Sept. 29, 2016)."); *Biser v. Mfrs. & Traders Tr. Co.*, 211 F. Supp. 3d 845, 856 (S.D. W. Va. 2016) (memorandum opinion and order) ("Plaintiffs alleging negligent supervision or training must first make an underlying showing of a negligence claim as to an employee, and then demonstrate that the employee was negligently trained or supervised. *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W. Va. 128[, 134], 538 S.E.2d 719, 725 (W. Va. 2000)[ (per curiam)]."); *Selders v. MegaCorp Logistics, LLC*, No. 2:14-CV-60, 2014 WL 12638026, at *1 (N.D. W. Va. Dec. 22, 2014) (order) ("Because the alleged acts in the Amended Complaint were intentional, the plaintiff has not alleged negligence 'as required to sustain a cause of action for negligent supervision.' *Heslep v. Americans for African Adoption, Inc.*, 890 F. Supp. 2d 671, 687 (N.D. W. Va. 2012) (Keeley, J.)."); *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 506 (S.D. W. Va. 2014) (memorandum opinion and order) ("The West Virginia Supreme Court of Appeals has indicated that a claim for negligent supervision requires an independent finding of negligence on the part of a supervised employee. . . . When an employer negligently fails to supervise an employee, but such negligence does not result in a negligent act on the part of the employee that harms another, the failure to supervise did not proximately result in damages." (citations to *Taylor* and *Heslep* omitted)); *Brown v. Tethys Bioscience, Inc.*, No. CIV.A. 1:10-1245, 2013 WL 65456, at *8 (S.D. W. Va. Jan. 4, 2013) (memorandum opinion and order) ("[A] claim for negligent supervision requires a separate finding of negligence on the part of the employee being supervised." (internal quotations and citations to *Taylor* and *Heslep* omitted)); *Heslep v. Ams. for African Adoption, Inc.*, 890 F. Supp. 2d 671, 687 (N.D. W. Va. 2012) (memorandum opinion and order) ("[A] claim for negligent supervision requires a separate finding of negligence on the part of the employee being supervised. *Taylor*, 538 S.E.2d at 725."). *Cf. Proctor v. King*, No. 2:19-CV-00432, 2021 WL 2169515, at *6 (S.D. W. Va. May 27, 2021) (memorandum opinion and order) ("To state a claim for negligent supervision or training under West Virginia law, a plaintiff must show that an employer 'failed to properly supervise' an employee and, as a result, the employee 'proximately caused injury to' the plaintiff. *Woods*, 712 F. Supp. 2d at 514 (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)[ (per curiam)])."); *Roush v. Schneider Nat'l Carriers, Inc.*, No. CV 3:18-1184, 2020 WL 5031998, at *2 (S.D. W. Va. Aug. 25, 2020) (memorandum opinion and order) ("To establish a negligent supervision claim, a plaintiff must show 'that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another.' *Biser v. Mfrs. and Traders Trust Co.*, 211 F. Supp. 3d 845, 856 (S.D. W. Va. 2016) (citing *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 817-18 (S.D. W. Va. 2012))."); *Woods v. Town of Danville, W. Va.*, 712 F. Supp. 2d 502, 515 (S.D. W. Va. 2010) (memorandum opinion and order) ("Under West Virginia law, negligent supervision claims must rest upon a showing that [the employer] failed to properly supervise [its employee] and, as a result, [the employee] proximately caused injury to the plaintiffs." (citation to *Taylor* omitted)).

23

circuit court correctly dismissed the Petitioners' cause of action for negligent supervision in Count 6 of their complaint because all of the allegedly wrongful conduct with which the Petitioners charge the Assistant Principal is intentional—false imprisonment, assault, sexual harassment, and intentional infliction of emotional distress—that, because it is not negligent, cannot form the basis of a negligent supervision claim. Thus, because all of the acts alleged to have been committed by the Assistant Principal were comprised of intentional conduct, the circuit court correctly ruled that the Petitioners had not made the requisite predicate showing of the Assistant Principal's negligence to support a claim of negligent supervision by the Board and that their claim in this regard should be dismissed. *See* W. Va. R. Civ. P. 12(b)(6).

Furthermore, as we recognized in the preceding section regarding the Petitioners' claim for negligent hiring, we also find that the Petitioners' complaint is factually deficient in stating a claim for negligent supervision because the complaint does not set forth factual allegations to provide notice to the Board that it is stating a claim for negligent supervision. All of the allegations in Count 6 of the Petitioners' complaint, of which negligent supervision is a part, pertain to the Petitioners' cause of action for negligent retention, discussed *infra*, with no averment or explanation as to how the Board allegedly was negligent in supervising the Assistant Principal. Therefore, dismissal of the negligent supervision claim in Count 6 of the Petitioners' complaint also is warranted because the complaint fails to state a claim upon which relief could be granted, W. Va. R. Civ. P. 12(b)(6); Syl. pt. 2, *Par Mar*, 183 W. Va. 706, 398 S.E.2d 532, and does not provide

24

sufficient notice to the Board of the nature of the negligent supervision claim alleged against it, W. Va. R. Civ. P. 8(a); *Chapman*, 160 W. Va. at 538, 236 S.E.2d at 212. Therefore, we likewise affirm this portion of the circuit court's order dismissing Count 6 of the Petitioners' complaint as it relates to their claim against the Board for negligent supervision.

**3. Negligent Retention.** The final claim the Petitioners assert in Count 6 of their complaint alleges that the Board was negligent in retaining the Assistant Principal as its employee. As with the other claims in Count 6, the circuit court also dismissed the negligent retention claim, finding that

> Plaintiffs [the Petitioners] . . . fail to allege sufficient facts to support a negligent retention claim against the HCBOE [the Board]. Not only have Plaintiffs [the Petitioners] alleged intentional conduct only, Plaintiffs have neglected to show that an injury occurred **after** [the Assistant Principal] was reinstated. While Plaintiffs [the Petitioners] have clearly stated that [the Assistant Principal] continuously appears during [the student's] lunch period, and that this behavior somehow breaches an agreement allegedly made between C.C. and HCBOE [the Board], Plaintiffs [the Petitioners] fail to allege facts and conduct showing all four (4) requirements in a negligence action: duty, breach, causation, and damages.

(Emphasis in original; footnote omitted). We find this ruling to be erroneous based upon our caselaw governing the negligent retention cause of action and the plain language of the Petitioners' complaint alleging this claim.

25

With respect to a claim of negligent retention, we have recognized that, to hold an employer liable for negligent retention, the employer must have been able to foresee "the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee." *McCormick v. W. Va. Dep't of Pub. Safety*, 202 W. Va. 189, 193, 503 S.E.2d 502, 506 (1998) (per curiam) (internal quotations and citation omitted). Thus, the relevant inquiry in a negligent retention analysis is, "Should the employer have reasonably foreseen the risk caused by . . . retaining an unfit person?" *Id.* Liability for negligent retention may be imposed when an injury occurred as a result of an employer's retention of an "unfit employee" and such risk of injury was reasonably foreseeable to the employer. *Id.*

The circuit court ruled that "Plaintiffs [the Petitioners] . . . fail to allege sufficient facts to support a negligent retention claim against the HCBOE [the Board]." Here, the Petitioners alleged that the student suffered injuries as a result of the Assistant Principal's interactions, which will be discussed further, *infra*. However, the Petitioners also sufficiently alleged the foreseeable nature of the student's injuries based upon the repeated incidences between the Assistant Principal and the student. Once the bathroom encounter had occurred, the Board certainly could have foreseen the possibility of additional confrontations by the Assistant Principal given his professed discomfort around the student, though the exact nature of such future encounters may have been unknowable. *See McCormick*, 202 W. Va. at 193, 503 S.E.2d at 506. And such possibility indeed became reality as demonstrated by the concession stand incident and the Assistant

26

Principal's perpetual presence in the cafeteria during the student's lunch period. Therefore, upon these allegations in the complaint, we conclude that the Petitioners alleged sufficient facts to establish the foreseeability element of a cause of action for negligent retention. *See id.*

In dismissing that portion of the Petitioners' complaint asserting a cause of action for negligent retention, the circuit court additionally found that the Petitioners had not demonstrated that the student sustained injuries and resultant damages after the Board decided to retain the Assistant Principal. However, the Petitioners' complaint does allege that the student suffered injuries after the Board retained the Assistant Principal as its employee.

In the "Facts" section of their complaint, the Petitioners allege three specific interactions between the Assistant Principal and the student that they claim caused the student's injuries. The first such occurrence, *i.e.* the bathroom incident, happened in November 2018. Following the recitation of this episode, the complaint avers that, "[i]n the time following the incident, [the student] has suffered from severe anxiety associated with his education and his extracurricular activities," and that "[the Assistant Principal] continued to overtly attempt to intimidate/harass both C.C. and the minor child [the student]." While it appears that the Assistant Principal was suspended after this encounter, the Board retained him as an employee and reinstated him to his position as Assistant

Principal, as evidenced by the occurrence of the concession stand episode a few weeks later in December 2018.

> Thereafter, the complaint alleges that,
>
> > [o]n or about the week of March 20, 2019, the HCBE [the Board] voted not to renew [the Assistant Principal's] contract at the end of the school year.
> >
> > Soon after, with full knowledge of the afore-described incident, the HCBE reversed itself and voted to renew the contract of [the Assistant Principal].
>
> The Petitioners then further aver that,
>
> > [t]hroughout the remainder of the school year, despite an agreement between C.C. and Defendant HCBE [the Board] that [the Assistant Principal] would never intentionally share the same spaces as [the student], [the Assistant Principal] would continuously appear and remain present during [the student's] lunch period.

While these allegations are not specifically restated in Count 6 of the Petitioners' complaint, the first paragraph of Count 6 states that "Plaintiff [*sic*] [the Petitioners] incorporates [*sic*] by reference in this count all other material allegations set forth elsewhere in this complaint," which would include the aforementioned factual allegations regarding the duration of the lunch room interactions between the Assistant Principal and the student. Therefore, despite the circuit court's findings to the contrary, the allegations of the complaint, if taken as true and construed in the light most favorable to the Petitioners, aver that the Assistant Principal's interactions with the student continued following his reinstatement after he was suspended, which resulted in the concession stand

incident, and also continued after the Board's decision to renew the Assistant Principal's contract given that the Assistant Principal's persistent presence in the school cafeteria during the student's daily lunch period lasted through the remainder of the school year. *See Lodge Distrib. Co.*, 161 W. Va. at 605, 245 S.E.2d at 158. In addition to the continuance of these interactions, the complaint's allegations detail the various injuries and associated damages the student suffered as a result of these encounters as required by the injury element of a negligent retention cause of action. *See McCormick*, 202 W. Va. at 193, 503 S.E.2d at 506. Therefore, the Petitioners have stated a valid claim for negligent retention in Count 6 of their complaint upon which relief may be granted. *See* W. Va. R. Civ. P. 12(b)(6).

Finally, in dismissing the Petitioners' negligent retention claim, the circuit court found that "Plaintiffs [the Petitioners] fail to allege facts and conduct showing all four (4) requirements in a negligence action: duty, breach, causation, and damages." However, we find that the facts pled in the complaint also establish the elements of a general negligence cause of action based upon negligent retention, despite the circuit court's finding to the contrary. *See Hersh*, 232 W. Va. at 310, 752 S.E.2d at 341. In Count 6 of the Petitioners' complaint, in which they include a claim against the Board for negligent retention, the Petitioners claim that the Board had a duty to employ school personnel who "demonstrat[e] appropriate behavior, treat[] others with civility and respect, and refus[e] to tolerate harassment, intimidation or bullying." *Quoting* W. Va. Code § 18-2C-1 (eff. 2001). Further, the Petitioners claim that the Board breached this duty by

"vot[ing] to renew [the Assistant Principal's] contract," which allowed the Assistant Principal to "continuously appear during [the student's] lunch period to further intimidate, harass, and bully [the student]." Finally, the Petitioners aver that, "[a]s a direct and proximate result of Defendant HCBE's [the Board's] negligent . . . retention . . ., [the student] suffered personal injuries and damages," such as "suffering and mental anguish, past and future lost enjoyment of life, past and future humiliation, embarrassment, indignity, and shame[.]" Having set forth allegations in the complaint to establish the elements of a general cause of action for negligence—duty, breach, causation, and damages—the Petitioners have provided sufficient allegations in support of their negligent retention claim to withstand the Board's motion to dismiss and to sufficiently apprise the Board of the nature of their claim for negligent retention. *See* W. Va. R. Civ. P. 8(a), 12(b)(6); *Hersh*, 232 W. Va. at 310, 752 S.E.2d at 341; Syl. pt. 2, *Par Mar*, 183 W. Va. 706, 398 S.E.2d 532; *Chapman*, 160 W. Va. at 538, 236 S.E.2d at 212.

Accordingly, we conclude that the Petitioners have stated a claim for negligent retention sufficient to survive the Board's motion to dismiss this claim, *see* W. Va. R. Civ. P. 12(b)(6), and, thus, we reverse the circuit court's order to the extent that it dismissed the Petitioners' negligent retention claim. We further remand this case for reinstatement of that portion of Count 6 of the Petitioners' complaint alleging a claim against the Board for negligent retention.

# IV.

## CONCLUSION

For the foregoing reasons, we affirm, in part, and reverse, in part, the January 27, 2020 order of the Circuit Court of Harrison County and remand this case for further proceedings consistent with this opinion.

Affirmed, in part; Reversed, in part; and Remanded with Instructions.